STATE OF MISSOURI, *ex rel.* M. R. CULLEN, Appellant, *v.* W. C. CARR, Auditor, etc., Respondent.

**July 3, 1876.**

Under the City Charter of 1870, where the police justice of the city of St. Louis was suspended by the mayor for misdemeanor in office, and tried and acquitted as provided by law, and another appointed to perform his functions, who acted as police justice during his suspension, the police justice was entitled, on acquittal, to receive his salary for the period during which he was suspended.

APPEAL from St. Louis Circuit Court.

*Reversed, and peremptory writ of* mandamus *ordered to issue.*

*W. V. N. Bay,* for appellant, cited : Donaldson *v.* Wood, 22 Wend. 395 ; Chart. of St. Louis, 73, sec. 13 ; Rev. Ord. 1871, pp. 73, 83, 515, 517, 519 ; Potter's Dwar. on Stat. 203, note 20.

*Leverett Bell,* for respondent, cited : Rev. Ord. 1871, art. 2, ch. 22, sec. 16 ; Ord. 1870, p. 73, art. 3, sec. 1 ; Rev. Ord. 1871, pp. 511–517, secs. 2–15, p. 519, sec. 16, p. 520, sec. 19, p. 522, sec. 1, p. 532, sec. 1.

BAKEWELL, J., delivered the opinion of the court.

This was a petition for a *mandamus,* to which there was a return, and a demurrer to the return, presenting the following facts :

On April 1, 1873, the relator of plaintiff was elected police justice of the city of St. Louis for the term of four years. He duly qualified, and entered at once upon the duties of his office.

The salary is $3,000 a year, as fixed by ordinance, payable monthly.

It is provided by ordinance (Rev. Ord. 15, sec. 1) that the mayor shall have power to suspend from office any elective officer who shall willfully violate any of his official obligations ; such action is to be reported to the City Coun-

cil, who then try the officer on charges framed by a committee of their body.

It is further provided (Rev. Ord. 519, sec. 16) that "no officer shall receive any salary during the time he shall be absent from the city without leave, or during the time he shall be suspended by the mayor for a supposed misdemeanor in office, nor until the Council shall decide the case."

On September 12, 1874, the mayor suspended the relator from office, and reported the facts to the City Council, who, on November 11, 1874, decided the case by acquitting the relator, who was thereupon restored to office. During the period of this suspension another person acted as police justice, by appointment of the mayor, according to law, and received the salary of the office.

This is a proceeding to compel the auditor of the city to audit and draw his warrant on the city treasury in favor of relator, for his salary during the period of his suspension, although relator performed none of the duties of his office during such period, and although another person did perform those duties, and was duly paid therefor in accordance with the provisions of the ordinance in such case made.

At the time of relator's election, and ever since, the city charter of March 4, 1870, has been in force, and provides (paragraph 13, art. 3, sec. 1) that the mayor and City Council shall have power, by ordinance, to regulate and provide for the election and appointment of city officers required by charter, and to provide for their suspension or removal, and establish the salaries, fees, and compensation of all officers for their services; *provided*, the salary of an officer shall not be changed during the time from which he is elected or appointed.

The charter does not fix the pay, salary, or emoluments of any officer of the city, nor provide for the payment thereof, but all these matters are by this instrument remitted to the Council and mayor, to be disposed of by ordinance. The

revised ordinance approved March 31, 1871, makes full provision for the compensation of every officer in the city.

Chapter 22 of this ordinance (Rev. Ord. 511) relates to city officers.

Section 2 of article 2 thereof gives the mayor the power of suspension already set forth in the very words of the law.

Section 2 of article 2 provides how a suspension shall be effected, and it is made a misdemeanor for any officer to exercise any of the duties of the office from which he shall have been suspended.

Section 3 requires the mayor, immediately upon the suspension of an officer, to appoint some person to fill the office for the time being.

Sections 4 to 15, inclusive, provide for the trial of the suspended officer, upon charges preferred before the Council.

And section 16 (Rev. Ord. 519) declares that no officer shall receive any salary during the time he shall be suspended by the mayor, nor until the Council shall decide the cause.

Section 19 (Rev. Ord. 520) provides that, during the term of suspension, the mayor shall fill temporarily the vacancy so caused.

It is also provided (p. 532, ch. 24, sec. 1) that the person officiating for the police justice shall be allowed the same salary *pro rata* as the police justice would be entitled to.

Chapter 24 of this ordinance relates wholly to the Police Court, and the section just quoted provides that, "in case the police justice should be absent from sickness, the salary of the person officiating in his stead shall be made chargeable to appropriations for salaries; otherwise, it shall be deducted from the salary of the police justice."

The mayor has power to suspend any elective officer who shall willfully violate his official duties. On so doing, he must file a statement of charges with the register, whereupon the Council appoints a committee of its members to inquire into the facts, who must frame and report to the

Council charges and specifications, if they deem the accusation well founded. The officer is then tried by the Council (Rev. Ord. 1871, pp. 517, 518). All this was done in Cullen's case, and it was judicially determined that he had not willfully violated his official obligations.

He was exposed, however, to the expense and annoyance of a trial. If, in addition to that, it is expressly provided by law that, though innocent, he must lose his salary during the time that he was suspended, there is no more to be said. He accepted the office on that condition, and it was competent for the mayor and City Council, in fixing the salary of the office, to make this one of the conditions of its tenure. But such a provision seems so contrary to certain principles of natural justice, and so impolitic, as placing a judicial officer in the discharge of his duties at the mercy of another, and tending to impair his independent action, that the law must be quite explicit, and fairly susceptible of no other construction, before the judicial mind will admit that such was the intention of the legislative body in framing the enactment. "*Ea accipienda est interpretatio quœ vitio careat*," *i. e.*, which does not intend a wrong.

The language of the law is "that he shall not receive any salary during the time he is suspended by the mayor for a supposed offense, nor until the Council shall decide the case."

He received no salary during that time, and it is very obviously in accordance with the right reason of the thing that he should not; because, if guilty, he was justly, lawfully, and properly suspended, and ought to get nothing until the Council decides the case; therefore he receives no salary.

But the law does not say in this paragraph that, when the case is decided and he is acquitted, he shall not then receive the salary which has been in abeyance during his suspension.

The law nowhere says that the mayor shall suspend any one who may be charged with, or suspected of, violating his

official duties. The language of the ordinance is (Rev. Ord. 1871, p. 517, sec. 1) : " The mayor shall have power to suspend from office any elective officer who shall willfully violate any of his official obligations." It is admitted that Cullen violated no official obligation. His suspension, therefore, though made doubtless in good faith, was wrongful, and it would seem a clear consequence of his acquittal that he should not, in consequence of such suspension, lose any of the perquisites of his office. When the Council decides the case, if found guilty, he may be removed from office. This is the only punishment provided, and all question of salary is at an end ; but, if acquitted, he is to receive the salary accrued. This seems to be the meaning of the expression that he shall receive no salary until the Council decides the case.

The law does not speak of earning a salary or being entitled to a salary, says nothing of depriving the accused of his salary, but simply fixes an event before the occurrence of which it shall not be received.

The only other provision of law bearing on the case is section 1 of the ordinance establishing the Police Court, which treats only of the case of the absence of the police justice. If he is absent from sickness, he is to be paid ; if absent voluntarily, his salary goes to his substitute. It is quite evident that the law-makers had in mind in this paragraph the two cases of voluntary absence or absence caused by sickness, and were not contemplating the question of involuntary absence caused by suspension from office. The word " otherwise," in this clause, must be interpreted in view of the plain meaning of the paragraph to be derived from the context.

We think that the judgment of the Circuit Court at special term in overruling this demurrer was correct, and that the Circuit Court at general term erred in reversing that judgment. The judgment of the Circuit Court at general term is reversed, and a peremptory writ of *mandamus* will be issued from this court. All the judges concur.