THE STATE ex rel. CHAPMAN v. WALBRIDGE et al., Appellants.

### Division One, December 22, 1899.

1. **Police: ST. LOUIS: REMOVAL.** Neither policemen nor police officers in St. Louis are removable except for cause.

2. ———: **PATROLMAN: TURNKEY.** As the words are used in the statute, a "patrolman" is included within the words "policeman" and a "turnkey" is a "police officer."

3. ———: ———: ———: **REMOVAL.** Relator was on March 19, 1889, appointed patrolman to take effect April 1, 1889, which entitled him to hold the position for four years. His term would have expired on April 1, 1893, but on January 4, 1892, by his own request and an order of the board he was appointed turnkey. *Held*, that the effect of his appointment to and acceptance of the office of turnkey, was to terminate his tenure of the office of policeman, and thereafter he continued to hold the office of turnkey, till July 1, 1893, when by virtue of a new appointment to the position of policeman and his acceptance thereof he was entitled to the position of policeman for four years from that date and to receive the pay of a policeman, unless sooner removed for cause, but could not be "dropped from the rolls."

4. ———: **REMOVAL: SALARY.** A policeman in St. Louis who has been "dropped from the rolls" by the board of police commissioners, but not legally suspended, that is "simply dropped" before his term of four years have expired, and not "removed for cause," is entitled to be restored to his position and to recover from the city

back pay from the date he was "dropped" to the date he was re-
stored to his position, or until to the end of his term. And if his
term has expired and he can not be restored to his position, the
court should simply give judgment for the amount due him.

5. Public Office: SALARY. The right of a public officer to the salary
of his office, is a right created by law, is incident to the office, and
not the creature of contract, nor dependent upon the fact or value of
the services actually rendered.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED (*with directions.*)

*B. Schnurmacher* and *Chas. Claflin Allen* for appellants.

(1) A policeman, appointed as such by the board of
police commissioners of the city of St. Louis, is entitled to
serve for a fixed and definite period of four years from and
after the date of his appointment. Laws of 1860-61, p. 449,
sec. 6 (2 R. S. Mo. 1889, p. 2195). (2) But if his period of
employment has expired and he is neither re-appointed, nor
takes the steps necessary to procure such re-appointment by
reason of the preference afforded him by the law, he is a mere
"hold over," a *locum tenens*, and may be dismissed from his
position by the board at any time, without charges or hearing.
State ex rel. v. Stonestreet, 99 Mo. 361; State ex inf. v. Val-
lins, 140 Mo. 523. (3) Relator having been discharged on
October 22, 1895, and having rendered no actual services or
duties as a policeman thereafter, and the agreed statement of
facts making it apparent that he did not even offer to render
any services thereafter, was not entitled to compensation be-
tween said date and the day of judgment, March 1, 1897; and
the trial court erred when it ordered a warrant therefor to be
drawn in relator's favor. Westberg v. Kansas City, 64 Mo.
493; Howard v. St. Louis, 88 Mo. 656; Steubenville v. Culp,
38 Oh. St. 18; Mullery v. McCann, 95 Mo. 579; State ex rel.

v. Clark, 52 Mo. 508; Mechem's Public Off. and Officers, sec. 332.

*Benj. J. Klene* for respondent.

(1)   A policeman, appointed as such by the board of police commissioners of the city of St. Louis, is entitled to serve for a fixed and definite period of four years from and after the date of his appointment.   Laws 1860-61, p. 449, sec. 6 (2 R. S. 1889, p. 2195.)   And is not removable except for cause on a hearing after notice.   State ex rel. v. Walbridge, 119 Mo. 383; State ex rel v. St. Louis, 90 Mo. 19; Mechem Pub. Off., etc., sec. 454; State ex rel. v. Brown, 57 Mo. 207. (2)   Under section 5 of article 14 of the constitution relator had a right to resign at any time and to relinquish any part of a term, which he did, by accepting another office on two occasions.   State ex rel. v. Draper, 45 Mo. 355; Biddle v. Willard, 10 Ind. 62; Mechem on Pub. Off., etc., sec. 411; Edwards v. U. S., 103 U. S. 471; State v. Brinkerhoff, 66 Tex. 45; Stubbs v. Lee, 64 Maine, 195; People v. Brooklyn, 77 N. Y. 503; State v. Lusk, 18 Mo. 242; State ex rel. v. Bus, 135 Mo. 325.   (3)   A turnkey is an "officer of police" as distinguished from a patrolman.   Laws 1860-61, p. 449, sec. 7 (2 R. S. 1889, p. 2195); State ex inf. v. Vallins, 140 Mo. 523.   (4)   Mandamus is the proper remedy by which to secure reinstatement by a policeman who has been wrongfully discharged, while he was actually in lawful possession and enjoyment of his office.   High on Extra Leg. Rem., sec. 67; State v. Common Council of Watertown, 9 Wis. 254; Riley v. Kansas City, 31 Mo. App. 439.   And to restore him to a full enjoyment of his franchise and to secure the issuance of a warrant on the treasurer for the pay due him.   High on Extr. Leg. Rem., sec. 67; Sanford v. City of Kansas, 69 Mo. 466; Riley v. City of Kansas, 31 Mo. App. 439; Flanagan v. City of Kansas, 69 Mo. 462; State ex rel. v. Carr, 3 Mo. App. 6.

He is entitled to his compensation for that part of his term after the illegal removal up to the date of his reinstatement, or to the end of his term.    State ex rel. v. Carr, 3 Mo. App. 6; Fitzsimmons v. Brooklyn, 102 N. Y. 536.

BRACE, P. J.—The appellants are the Board of Police Commissioners of the city of St. Louis.    This appeal is taken from a judgment of the circuit court of said city, granting a peremptory writ of mandamus commanding the said Board of Police Commissioners to rescind its order of October 22, 1895, dropping relator from the rolls of the police force of said city, to reinstate him as a policeman for the unexpired term of four years beginning July 1, 1893, and to issue to relator a warrant upon the city treasurer for $1,352.79, compensation found to be due him from October 22, 1895, to the day of judgment.

The case was submitted and decided in the circuit court on the following agreed statement of facts:

"It is hereby stipulated and agreed by and between the relator and respondents herein as follows:    That the records of the Board of Police Commissioners show the following proceedings with respect to the employment and service of the relator as a member of the police force of the city of St. Louis, to wit:    That on the eleventh day of September, 1888, the relator, John N. Chapman, who was nominated on the force as an emergency special by Mr. Vice-President Blair, September 4, 1889, having passed a satisfactory physical examination and complied with rule 96 of the Manual, was called before the board and interrogated.    Said Chapman was informed that his appointment was temporary, and subject to terminate at any time at the will of the board, and that his salary as an emergency special would be fixed at the rate of sixty dollars per month.    Said Chapman agreed to accept the appointment upon these conditions.    He was on motion appointed an emergency special, sworn in and ordered to be assigned to duty.

"That thereafter, on the 19th day of March, 1889, 'upon the recommendation of Captain Samuel J. Boyd, emergency special John N. Chapman, 3d district, was promoted to the rank of patrolman to take effect April 1, 1889.' That thereafter, on January 5, 1892, 'on motion and at his own request, patrolman John N. Chapman, 6th district, was reduced to the rank of turnkey, to take effect January 5th, 1892.' That thereafter, on June 15, 1893, 'on motion of Mr. Small, turnkey John N. Chapman, 6th district, was promoted to the rank of patrolman, to take effect July 1, 1893,' where he continued to serve until October 22, 1895. That on October 22, 1895, 'it was moved that the minutes of the last meeting be corrected as follows: That George H. Chappell, of the 6th district, be reinstated as patrolman, and that John N. Chapman, whose term of service has expired, be not reappointed and that he be dropped from the rolls to correct a clerical error.'

"It is further agreed that since the 1st day of July, 1893, the regular pay of patrolman has been $83.33 1-3 per month, and that this is the compensation relator was receiving on and prior to October 22, 1895, which was paid him by the treasurer of the city of St. Louis on warrant, duly signed by the president and secretary of the Board of Police Commissioners, which offices are now held respectively by Cyrus P. Walbridge president, and Wm. O. Keeble secretary."

The law governing the case is found in article 29 of the city charter, 2 Revised Statutes, 1889, pp. 2192, *et seq.* By section 6 of the Act, authorizing the board of Police commissioners "to appoint, enroll and employ a permanent police for the city of St. Louis," after providing the number of "policemen . . . exclusive of officers" that shall be employed at the first organization, and that no person shall be appointed or employed as "policeman or officer of police" who shall have been convicted of an infamous crime, etc., it is further provided that "the policemen shall be employed to serve four years, and be subject to removal only for cause, after a hearing

by the board, who are hereby invested with exclusive juris-
diction in the premises.   Any policeman whose term of ser-
vice shall expire, and who, during his appointment, shall have
faithfully performed his duty, shall, if otherwise qualified, be
preferred by the board in making their new appointments"
and by section 7 it is provided that "the officers of police shall
be as follows:   One chief of police, who shall give bond, with
security, in the penal sum of twenty thousand dollars for the
faithful performance of his duties; three captains, three lieu-
tenants, not exceeding twelve sergeants, and four turnkeys;
they shall be appointed by the board for such time as the board
shall determine, and be subject to removal by the board for
cause."

Section 8 provides "each captain shall receive one hun-
dred dollars per month; each lieutenant, eighty-five dollars per
month; . . . . each ordinary policeman and detective sev-
enty-five dollars per month, and each turnkey fifty dollars
per month, payable monthly."   Section 11 provides that va-
cancies in any grade of officers except that of chief, shall be
filled from the next lowest grade, if competent men can be
found therein, authorizes the board to make all necessary
rules and regulations not inconsistent with this act for the
appointment, employment, uniforming, discipline, trial and
government of the police force, and the relief and compensa-
tion of members of the police force injured in the discharge
of their duty, and "the families of the officers or men killed
while in discharge of duty" not to exceed twelve months'
pay, and that the board shall have power to require "of any
officer or policeman bond with sureties," etc.

Section 12 provides that, "no officer of police or police-
man shall be allowed to receive any money, or gratuity, or
compensation for any service he may render, without the con-
sent of said board; and all such moneys as any policeman or
police officer may be so permitted to receive shall be paid over
to the board," etc.

(1.)   It is manifest from the foregoing provisions of the law, that the police force of the city is thereby divided into two separate, distinct and well defined classes, viz, policemen and police officers, each class well differentiated from the other.   [State ex inf. v. Vallins, 140 Mo. 523.]   It is equally clear that while the former are appointed for a fixed and definite term of four years, and the latter for an indefinite term, neither are removable by the board except for cause. [State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. St. Louis, 90 Mo. 19; State ex rel. v. Brown, 57 Mo. App. 199; State ex rel. v. Police Comms., 14 Mo. App. 297; s. c., 88 Mo. 144; Mechem's Pub. Off. and Offs., sec. 454.]   It is also evident that the person designated by the word "patrolman" as used in the statement of facts is included within the term "policeman" and not within the term "police officer" as used in the statute, and that under the statute a "turnkey" is a "police officer" as distinguished from a "patrolman" or "policeman."   The contention for the appellants is that the relator was by the action of the board, on the 19th of March, 1889, regularly appointed a policeman on the permanent force within the meaning of the statute, and became entitled to hold that position for four years from the first of April, 1889; that the term for which he was appointed having expired, on the first day of April, 1893, and not having been re-employed after that date, nor made any effort to secure re-employment, he remained on the force after that date as a mere hold-over or *locum tenens* of the position, subject to removal at any time at the pleasure of the board, hence his discharge without cause on the 22d of October, 1895, was lawful and he has no ground of complaint.   In support of this proposition, State ex rel. v. Stonestreet, 99 Mo. 361, is cited, and upon the authority of that case the contention might well be maintained, if as a matter of fact the relator was on and after the first day of April, 1893, holding over his position as policeman under his appointment of March 19, 1889.   But

was he so holding over that position? This is the crucial question in the case and can not be assumed in the teeth of the agreed facts, from which it appears that on fifth of January, 1892, at his own request, and by order of the board he was appointed "turnkey," and by virtue thereof ceased to be a "policeman" and became a "police officer" within the meaning of the statute just as much as if he had been appointed chief, captain, lieutenant, or sergeant of the force. That the office of "turnkey" and the position of "patrolman" are incompatible, and that the relator could not hold and receive pay for both at the same time, is beyond question. [State ex rel. v. Draper, 45 Mo. 355; State ex rel. v. Bus, 135 Mo. 325.] So that the effect of the relator's appointment to and acceptance of the office of "turnkey," was to terminate his tenure of and right to the position of "policeman" under his appointment thereto of March, 1889, on the fifth day of January, 1892 (State ex rel. v. Bus, *supra*; Stubbs v. Lee, 64 Maine, 195); and thereafter he continued under the appointment of that date to hold the office of "turnkey" until the first day of July, 1893, and until after the term for which he was first appointed as policeman had expired; when by virtue of his reappointment to the position of policeman on the fifteenth of June, 1893, to take effect on July 1, 1893, and his acceptance thereof, his tenure of and right to the office of "turnkey" was terminated. *He was re-employed as "policeman,"* and thereafter continued to hold his position as such, not under his appointment as policeman of March 19, 1889, nor under his appointment as turnkey of January 5, 1892, but under his appointment of June 15, 1893, with the right to hold the position of policeman, discharge its duties and receive pay therefor for the term of four years from the first of July, 1893. Of course the relator could not hold over in one office while he was actually holding another incompatible one, and in fact he never did hold over under any of his appointments. Hence he was not a mere *locum tenens* of the position of policeman

on the twenty-second of October, 1895, but was the lawful incumbent thereof for a term ending July 1, 1897, and the board had no authority to discharge him without cause, as in effect it did by its order of that date, and the court committed no error in ordering its rescission and his reinstatement.

(2.)   It is next contended that the court erred in ordering a warrant to be drawn on the city treasurer in favor of the relator for the sum of $1,352.79, the amount of his monthly salary from the twenty-second of October, 1895, to March 1, 1897, the date of the judgment, for the reason that he rendered no actual service therefor and it does not appear that he offered to do so.   In support of this contention Westberg v. City of Kansas, 64 Mo. 493, and Howard v. St. Louis, 88 Mo. 565, are cited.   The question decided in the first case was that an officer, in that case a patrolman, legally suspended from office, could not recover anything on account of salary after his suspension, and the second case is to the same effect.   In that case it was held that under section 9 of the Scheme and Charter of St. Louis, the mayor had the power to suspend or remove the plaintiff, who was the resident physician of the insane asylum.   That he was legally suspended by an agreement entered into between the mayor and the county court, and that he could not recover his salary after the date of the agreement.   The court saying, "His case is not materially different from that of Westberg v. City of Kansas, 64 Mo. 493.   Westberg was legally suspended and claimed his salary for the time he was suspended, but this court held he was not entitled to it."   If the plaintiff in the case in hand had been legally discharged or suspended on the twenty-second of October, 1895, these cases would have been in point, but as he was on that day illegally discharged, as we have seen, they manifestly afford no support to this contention.   Nor do we find any support for it in the cases of Mullery v. McCann, 95 Mo. 579, or State ex rel. v. Clark, 52 Mo. 508, also cited by counsel for appellant; in the first of which it is simply held

that "an officer *de jure*, who has been ousted by an intruder, can recover from the latter the fees received by him during his intrusion," and in the second that, "he, who has the commission, is entitled to the emoluments of the office until the State, by a proper proceeding, has revoked the authority with which it has invested him." Nor in the rule quoted by.them from Mechem on Pub. Office and Officers, section 332, that, "If payment of the salary or other compensation he made by the government, in good faith, to the officer *de facto*, while he is still in possession of the office, the government can not be compelled to pay it a second time to the officer *de jure* when he has recovered the office, at least when the officer *de facto* held by color of title." These cases and this rule can have no application to the case in hand, in which the plaintiff was not prevented from holding his office, discharging its duties, and drawing its salary by reason of the fact that some other person had intruded himself into it under color of title to whom the salary might in good faith have been paid, but by the wrongful act of the Board of Police Commissioners (the governing power) in discharging him without cause. To the office of policeman from which he was removed he had good title, he was in possession, and no one was disputing it. To that office the law attached a monthly salary, and to that salary he was entitled so long as the law remained in force and under it he lawfully held the office. The legal right to the office carried with it the right to the salary. The board by its wrongful act could not deprive him of this legal right. The right of a public officer to the salary of his office, is a right created by law, is incident to the office, and not the creature of contract, nor dependent upon the fact or value of services actually rendered. [Givens v. Daviess Co., 107 Mo. 603; Gammon v. Lafayette Co., 76 Mo. 675; State ex rel. v. Carr, 3 Mo. App. 6; State ex rel. v. Brown, 146 Mo. 401; Fitzsimmons v. Brooklyn, 102 N. Y. 536; Andrews v. Portland, 79 Maine, 484; Memphis v. Woodward, 12 Heiskell, 499; People

ex rel. v. Smyth, 28 Cal. 21; Carroll v. Siebenthaler, 37 Cal. 193; Koontz v. Franklin Co., 76 Pa. St. 154; Walker v. Cook, 129 Mass. 579; Hoke v. Henderson, 4 Dev. (N. C.) 1; City Council v. Sweeney, 44 Ga. 463; People ex rel. v. Brennan, 30 How. Prac. Rep. 417.] Hence, the fact that the relator after he was wrongfully and without warrant of law discharged from his position as policeman, and was thereby and thereafter prevented from discharging the duties of that position, and did not in fact discharge those duties or offer to do so, affords no ground for denying him his salary, and the court committed no error in awarding him a mandamus therefor.

Finding no error, the judgment of the circuit court ought to be affirmed. But as the respondent's term of office has expired since this appeal was taken, and he can not be reinstated as ordered by the circuit court, and the *personnel* of the Board of Police Commissioners has also been changed since the appeal was taken and a simple affirmance will not afford the relator the adequate remedy to which he is entitled, in lieu of such affirmance the judgment of the circuit court will be reversed and judgment will be entered here, under section 2304, Revised Statutes 1889, awarding a peremptory writ of mandamus directed to said board as now constituted, commanding them to issue to relator a warrant upon the city treasurer for the sum of $1,688.89, being the amount of his salary from October 22, 1895, to July 1, 1897, and that relator recover his costs herein. All concur except *Marshall, J.*, not sitting, having been of counsel.