THE STATE ex rel. RIFE v. HAWES et al., Appellants.

### In Banc, November 3, 1903.

1. **Officer:** TENURE: HOLDOVER.   An officer who has served his full term holds thereafter as a mere *locum tenens*, or hold-over, until his successor is appointed, or until the appointing power chooses to remove him.

2. ————: ————: ————: REAPPOINTMENT BY IMPLICATION.   The police act of St. Louis provides that a police officer shall be appointed for a term of four years and that "any policeman whose term of service shall expire, and who, during his appointment, shall have faithfully performed his duty, shall, if otherwise qualified, be preferred by the board in making new appointments."   *Held*, that the permitting of such an officer to hold over after his term has expired does not amount to a re-appointment by implication for another term, nor prevent the board from removing him from office at any time after the expiration of the term for which he was appointed, without cause, notice or hearing.

3. ————: ————: ————: ————: FAITHFUL SERVICE: PREFERENCE: DISCRETION IN BOARD.   This act does not mean that, if the officer has faithfully performed his duty and is from that reason entitled to be preferred for re-appointment, this alone would be tantamount to re-appointment.   The law gives to such officer a preference, but it does not give him an absolute, unqualified right to re-appointment.   The power given to the board carries with it the right to determine which of two applicants is the better fitted for the position.   The provision only means that if everything else is equal, the preference shall be given to the faithful incumbent.   But the act gives the board power to determine whether the officer has faithfully performed his duties, and their determination of that fact is not subject to review by the courts.

State ex rel. Rife v. Hawes

4. ———: PARTIES TO ACTION: EXPRESS TRUST. One policeman cannot maintain a suit for the salary due another, unless there is an assignment for a valuable consideration of the claim to him, or unless he is made by writing a trustee of an express trust by the other.

5. ———: TURNKEY: REDUCTION FROM PATROLMAN: TENURE. A patrolman, receiving a salary of eighty-three and a third dollars a month, was while a hold-over, reduced to the rank of a turnkey, whose salary is $65 per month, and was removed after he had served as turnkey about nineteen months. The police act authorizes the board to appoint a turnkey for such time as the board shall determine, but the board had not fixed any term for the turnkey. Held, that even if it be conceded that his reduction from a patrolman to the rank of a turnkey was an appointment of him as a turnkey, still the board had power to remove him at any time, without cause, notice or hearing.

6. ———: CHANGE IN RANK: ACQUIESCENCE. Where a patrolman, whose term is fixed by law is, during the term, changed to the rank of a turnkey, whose tenure is indefinite, and acquiesces therein, he surrenders the certainty of the unexpired part of his fixed term for the uncertainty of his indefinite term as a turnkey, and can be removed at the pleasure of the board, whether the change be considered a reduction or a promotion. (Distinguishing and overruling Campbell v. Board of Police Commissioners, 14 Mo. App. 308; s. c. 88 Mo. 144.)

7. ———: TERM UNFIXED BY BOARD. The term of a private or ordinary policeman is fixed by the police act of St. Louis, but the term of an officer is left to be fixed by the board, and if it does not fix any term the officer can be removed at any time without cause.

8. ———: ———: PROMOTION AND REDUCTION. A policeman, whose term is fixed by law at four years, cannot be removed during the term except for cause. But he is liable to be promoted or reduced to another rank, which has no fixed tenure, and if either is done, and he acquiesces therein, he loses his fixed tenure of office, and takes the new grade for such time as the board may determine, and if the board fixes no tenure he takes his new rank and salary for such time as the board may allow.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer,* Judge.

REVERSED.

*C. W. Bates* and *Wm. F. Woerner* for appellants.

(1)   Relator, if he ever had any right, can not now recover because the facts show that he and his assignors acquiesced in the police board's orders of dismissal, considered the same final, and abandoned any claim they might otherwise have had.   This is shown by the failure to demand any salary, or to offer to perform any services, or to take any legal steps for reinstatement, for a great length of time, and by retiring voluntarily under the half-pay provisions of the police pension law, and taking active part in the attempt to uphold the validity of that law.   If it was not the purpose of relator and his assignors to abandon their claims for salary, then they should now be estopped from asserting the same.   They should not be permitted to stand passively by for years while others fill their places and draw their pay, when relators knew that appellants and the city of St. Louis relied on the validity of their dismissals, and that timely action would have prevented double payment.   Such laches should surely prevent recovery.   High, Extr. Rem. (3 Ed.), sec. 269; Taylor v. Board, 57 N. J. L. 376; Clarke v. Jersey City, 42 N. J. L. 94; Byrnes v. St. Paul, 78 Minn. 205; Phillips v. Boston, 150 Mass. 491; Hagan v. Brooklyn, 126 N. Y. 643; State v. Finley, 74 Mo. App. 213; People v. Seneca Common Pleas, 2 Wend. 264; People v. Board of Police, 26 N. Y. 316; People v. Board, 158 N. Y. 125; Gray v. Saginaw, 49 Mich. 628; Selby v. Portland, 14 Ore. 250; Gorley v. Louisville, 104 Ky. 379, s. c., 47 S. W. 265; State v. Police Commissioners, 80 Mo. App. 221.   Especially should these facts bar relief in this case because the city of St. Louis, which would be called on to pay relator, was compelled to pay the new men on the warrant of the board, without having a legal right even to protest, and the plaintiffs and defendants should not be permitted to make it pay again.   State ex rel. v. Mason, 153 Mo. 23 (giving the city no option

but to pay as the board directs). Byrnes v. St. Paul, 78 Minn. 205; Phillips v. Boston, 150 Mass. 491. (2) Relator is clearly barred by limitation. More than five years had elapsed since the dates of the respective dismissals (in one case, that of Blair, over five and one-half years) when the original alternative writ was asked for, so that claimants were then barred. Their salary was payable monthly, hence the right to recover, if any, was complete, at the latest, at the end of each month after they were discharged, without waiting for the end of the alleged term. Their claims not being running accounts, at least so much thereof was barred as was over five years old when suit was first filed, and that portion at least should have been disallowed. Butler v. Kirby, 53 Wis. 192; Miller v. Cinnamon, 168 Ill. 452; Harrison v. Hall, 8 Mo. App. 167; Estes v. Shoe Co., 54 Mo. App. 551; Chadwick v. Chadwick, 115 Mo. 586; 19 Am. and Eng. Ency. Law (2 Ed.), 209. Limitation may be pleaded in a mandamus proceeding. People v. Chapin, 104 N. Y. 102; High, Extra. Rem. (3 Ed.), secs. 30b, 355; Merrill on Mand., sec. 314. (3) The police board had a right to drop relator and his assignees from the force in the manner it did, and its action can not be made the subject of complaint. None of the officers were ever re-appointed or re-commissioned for a new term after the expiration of the term for which their appointments were made. At the time of dismissal each had become a mere hold-over or *locum tenens* of the position, subject to discharge at the pleasure of the board. Retention after the four years' term, for a day or a week, without affirmative action by the board, could hardly be claimed to operate as a re-appointment. Mere retention for a longer time did not effect a different result, and this even without the added consideration that such commissions as were issued (1870, 1876, 1884) are expressed to be for "four years and until his successor be duly appointed and qualified, unless otherwise ordered." State ex rel v.

Stonestreet, 99 Mo. 361; State ex rel. v. Walbridge, 153 Mo. 200; R. S. 1899, sec. 8847; Const., art. 14, sec. 5. (4) (a) Even if the police board acted irregularly and unauthorizedly in dropping the relator and his assignors, and many others from the rolls, and appointing others in their places (so as to keep the full complement of men allowed by law on the force), yet, acting in good faith, such proceedings were not absolutely void, so that they could be totally disregarded in law. Such acts could perhaps under such circumstances be corrected by timely legal proceedings for reinstatement, but the right to be reinstated of itself implies necessarily that the officers were no longer in the position, else they could not be reinstated. The right to appoint was at all times limited to the number of police whom the board actually had acting on the force, and it follows that if the said dismissals were all void, so that the officers continued in law to be policemen and entitled to pay, then the new appointments of all the patrolmen to fill their places were also void, because in excess of the number authorized to be appointed by law, R. S. 1889, p. 2193, chap. 29, secs. 6, 9, 20. In fact, under the nullity theory the old appointees are even now on the force, since they had, as they claim, a legal right to preferment which they have not lost, and the acting officers are usurpers. (b) At all events, the number of places being limited, there could not be two sets of officials filling the same positions at the same time. If the old ones were, the new ones could not be, in office. Such a result, involving as it would the whole police force of the city of St. Louis in inextricable confusion, and thereby endangering its efficiency to protect the citizens, shows the necessity of ascribing to the bona fide acts of that board at least sufficient vitality to have made the new policemen *de facto* officers, entitling them to the pay they received for their services, and effecting a corresponding *de facto* removal of the men in relator's attitude, so that

in the interval after dismissal and before application for reinstatement they are not entitled to collect pay as if they had never been dismissed. This being the situation, mandamus is not the proper remedy, and relator's assignors should first establish the right to their offices by quo warranto against the incumbents. State ex rel. v. Commissioners, 80 Mo. 221; State ex rel. v. Gasconade Co. Court, 25 Mo. App. 450; Gorley v. Louisville, 104 Ky. 372; Selby v. Portland, 14 Ore. 243; Lee v. Mayor, 40 Atl. (Del.) 663; State ex rel. v. Clark, 52 Mo. 508.

*Joseph Wheless* for respondents.

(1) An appointment to an office, or a reappointment, needs no formal act or ceremony. It may be by parol, or in any way that signifies such intention. There need be no formal record made of it. The fact is all that is requisite. People ex rel. v. Commrs., 70 N. Y. 521; Kiley v. Forsee, 57 Mo. 396; Keely v. Sanders, 99 U. S. 441; 19 Am. and Eng. Ency. Law, p. 436; People ex rel. v. Murray, 70 N. Y. 521; People ex rel. v. Board, 26 N. Y. 316; State ex rel. v. Commrs., 14 Mo. App. 305, s. c., 88 Mo. 144. (2) The meaning and force and effect of this provision of the St. Louis Police Law are very clearly adjudicated in the Campbell case, supra. But such provisions, in regard to "preference for appointment" are not peculiar to our police law; they are an important feature of the policy of the civil service laws of several States, and have received settled and authoritative construction in many cases. The statutes of several States provide that "preference for appointment" shall be given ex-union soldiers; and these provisions are held to confer a distinct right and impose a distinct duty, which may be enforced by mandamus. People ex rel. v. Bardin, 7 N. Y. Supp. 123; People ex rel. v. Police Board, 51 Hun 345; People ex rel. v.

Police Board, 52 Hun 464; People ex rel. v. Department, 53 Hun 141; People v. Wallace, 55 Hun 149. Aside from the express and authoritative decisions of the several foregoing cases, establishing the meaning and effect of the "preference for reappointment" clause of the police law, the general principles of statutory construction demand that it be given full force and effect. It is not an idle form of words; it means, and was intended by the Legislature to mean something; and it means just what it says—"the policemen whose service has been faithful, shall have preference for reappointment." This is what it means, and it is mandatory. People ex rel. v. Angle, 109 N. Y. 564; Riddick v. Walsh, 15 Mo. 536; St. Louis v. Lane, 110 Mo. 254; Hicks v. Jamison, 10 Mo. App. 35. (3) Defendants lay much stress upon their assumption that the relators, after the expiration of their first terms, were "mere hold-overs or *locum tenens,* subject to be dismissed at the pleasure of the board." This is not at all true, in fact or law. The two cases cited by defendants in this connection, the Stonestreet case and the Chapman case, do not at all support any such contention as made in these cases; but on the contrary go very far and very strongly to win the cases made by relators. In the Chapman case this court said, "hold-over can not be assumed." (4) "The fact that the relator, after he was wrongfully and without warrant of law discharged from his position as policeman, and was thereby and thereafter prevented from discharging the duties of that position, and did not in fact discharge those duties or offer to do so, affords no ground for denying him his salary, and the court committed no error in awarding him a mandamus therefor." State ex rel. v. Walbridge, 153 Mo. 194; Bates v. St. Louis, 153 Mo. 18 (citing many cases); Bier v. Gorrell, 30 W. Va. 95; s. c., 8 Am. St. Rep. 17; Andrews v. Portland, 79 Me. 484; s. c., 10 Am. St. Rep. 280; State ex rel. v. Carr, 129 Ind. 44; s. c., 28 Am. St.

Rep. 163; Ward v. Marshall, 96 Cal. 155; s. c., 31 Am. St. Rep. 198. "Where an office is one with a fixed salary attached to it, the officer will be entitled to recover the entire official salary, without any deduction he may have earned himself while ousted." Bier v. Gorrell, supra; People v. Miller, 24 Mich. 458; s. c., 9 Am. St. Rep. 131; Comstock v. Grand Rapids, 40 Mich. 397; Dolan v. Mayor, 68 N. Y. 274. (5) Mandamus is the proper remedy to restore the relators to their offices and to obtain warrants for their salaries. St. Louis County Court v. Sparks, 10 Mo. 117; Sanford v. City of Kansas, 69 Mo. 466; Riley v. Kansas City, 31 Mo. App. 39; State ex rel. v. Walbridge, 153 Mo. 194; State ex rel. v. Mason, 153 Mo. 55; Gill v. Watertown, 9 Wis. 254; Linsay v. Luckett, 20 Tex. 516; Ex parte Wiley, 54 Ala. 226; High on Ext. Rem., secs. 67-69. The term of office and the salary being fixed, the drawing of the warrant is a ministerial act. High on Ext. Rem., sec. 105, and cases cited. (6) One of the objections made here by defendants, but not in motion for new trial, is against the action of several of the officers in assigning to one selected for the purpose the right to demand the several warrants in one action, for the purpose of avoiding a "multiplicity of actions," and to save costs. This objection takes a three-fold aspect as against the assignments: (1) Because they are claims for official salary; (2) because, "merely for collection; nothing paid for them;" and (3), because "several distinct claims can not be united in mandamus." (a) There can be no possible objection, in reason, for assigning the claim for past due salary of a public officer, and the authorities expressly uphold such assignment. Beal v. McVicker, 8 Mo. App. 202; Berkbeck v. Stafford, 23 How. Pr. 236; Richardson v. Rust, 9 Paige 243; Bliss v. Lawrence, 58 N. Y. 442; s. c., 17 Am. Rep. 273; Thompson v. Cullers (Tex.), 35 S. W. 412; Ciples v. Blair (S. Car.), Rich Ch. 60. (b) The assignment was regular and formal. But no consideration for its

transfer to plaintiff appeared. The account was evidently assigned to him to collect for the use of the assignors. That did not preclude a recovery. "An assignee of a chose in action, arising out of a contract, may sue upon it in his own name, though the title was passed to him only for the purpose of collection." Young v. Hudson, 99 Mo. 102; Haysler v. Dawson, 28 Mo. App. 531; Dean v. Chandler, 44 Mo. App. 338; Wilson v. Smith, 52 Mo. App. 133; Guinotte v. Ridge, 46 Mo. App. 254; State ex rel. v. Fraker, 166 Mo. 130. (c) On the point that several distinct claims for salary due to different officers can not be assigned to one relator and included in one proceeding for mandamus, the entire practice of the courts, both State and Federal, is overwhelmingly to the contrary, and clearly establishes this procedure as correct practice. Relators should rather be commended for joining their claims, so as to avoid multiplicity of suits and save costs; but, in any event, this is the established practice of this court and of all the courts. State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. Seibert, 130 Mo. 202; State ex rel. v. Fraker, 166 Mo. 120; State ex rel. v. Westport, 135 Mo. 120; State ex rel. v. Holt, 135 Mo. 533. Mandamus by several relators to judge to certify fee bills for fees of ninety-five witnesses, assigned to them: State ex rel. v. Oliver, 50 Mo. App. 217; State ex rel. v. Oliver, 116 Mo. 188.

GANTT, J.—This is a proceeding by mandamus begun on November 1, 1900, by the relator, a former member of the police force of St. Louis, against the Board of Police Commissioners, to compel them to draw a warrant in his favor for $21,610.24, for pay for himself and nine others, who, it is averred, assigned their claims to him.

The alternative writ sets out that on April 16, 1895, the Metropolitan Police Act of 1861, with the acts amendatory thereof, as the same appears in article 29

of the Appendix of the Revised Statutes of 1889, was in force, and that on that day the then board of police commissioners appointed the relator a policeman or patrolman, under said act, for a term of four years, commencing on said April 16, 1895; that relator entered upon said office and continued to discharge the duties thereof until October 17, 1895, when he was "dropped from the rolls" by the board, without cause, or notice or hearing; that section six of the act of 1861 provided that "the policemen shall be employed to serve for four years, and be subject to removal only for cause, after a hearing by the board, who are hereby invested with exclusive jurisdiction in the premises. Any policeman whose term of service shall expire, and who, during his appointment, shall have faithfully performed his duty; shall, if otherwise qualified, be preferred by the board in making their new appointments;" that the defendants constitute the present board, under the act of 1899 (Laws 1899, p. 51); that relator is entitled to $83.33 1-3 a month pay as policeman for 41 months and 29 days, that is, for the unexpired portion of the four-year term, ensuing after his removal, amounting to $3,497.23, for which he asks to have the defendants draw a warrant in his favor on the city of St. Louis.

By separate counts, the relator sets up the appointment of the nine others, and the fact that they too were dropped from the rolls at the same time that he was, to-wit, on October 17, 1895, and that they duly assigned their claims to relator for a lawful consideration. Upon the trial, relator dismissed as to all of the claims except those of John F. Hess and Marcus Blair, and as to them it is alleged that they were appointed respectively on January 1, 1895, and March 26, 1895, were both discharged on October 17, 1895, and warrants for $3,238.68 and $1,830.83, respectively, are asked for on their claims.

The return pleads the following defenses: *first,* that the petition and alternative writ do not state facts sufficient to entitle relator to a peremptory writ; *second,* that if relator was improperly deprived of his office, he must first be re-instated in office before he can claim the salary, and that re-instatement is impossible in this case, because the term of office of relator had expired before the action was begun; *third,* a general denial; *fourth,* a special plea that the relator was first appointed a patrolman on April 16, 1875, and "was retired on half pay on October 17, 1895, as a veteran, after twenty years service, with his entire acquiescence and consent, relator then believing, as was generally believed, that the act of the Legislature which authorized such retirement on half pay, was a valid and constitutional act" [The act here referred to is the act approved April 9, 1895, Laws 1895, p. 234]; *fifth,* a special plea of acquiescence in said retirement as such veteran, and a voluntary abandonment of the office; *sixth,* a special plea of laches; *seventh,* a special plea that between his original appointment on April 16, 1875, and his retirement as a veteran on October 17, 1895, the relator has never been reappointed or recommissioned, nor was his grade or rank altered or changed, but that after the expiration of his original term of four years, which began on April 16, 1875, relator was a mere *locum tenens,* or hold-over, at the pleasure of the board and subject to be dropped at any time; *eighth,* a special plea of the five-year statute of limitations.

The return also shows that all of the nine others, who it is alleged assigned their claims to relator, had served more than twenty years and were retired as veterans, under the act of 1895 aforesaid, except John F. Hess, who was appointed a "special" on August 22, 1877, a regular patrolman on January 1, 1879, and was dropped from the rolls on October 17, 1895, and as to him it is alleged that he was a mere *locum tenens* and

subject to be dropped at any time at the pleasure of the board; and as to Marcus Blair, the return alleges that he was first appointed a patrolman on June 8, 1871, was *reduced* to turnkey August 1, 1893, and was dropped from the rolls on March 26, 1895, as being a mere *locum tenens,* and as to him the return pleads acquiescence, voluntary abandonment, laches and the statute of limitations.

The reply states the real contention of the relator. It denies that after the expiration of the original term of four years the relator became a mere *locum tenens,* but avers that during said term he faithfully performed his duty, and that under the act creating the police force, he was therefore entitled to be preferred by the board in making new appointments, and that such provisions of such act is mandatory, and that in carrying out, this "mandatory direction, it was the established and unvarying and legal custom and usage of the said Board of Police Commissioners, in the execution of their duty in making such preferred reappointments, from its first organization to the present time, to reappoint the several officers and policemen of the police force under its command, who were properly qualified and entitled under the said law, after the expiration of their first term of service *and at the expiration of any succeeding term of service, by ipso facto continuing the said officers and policemen in service;* and relator avers that the fact itself of being so continued in service under the law and the immemorial custom and usage of the said board, was taken and held by the said board and by the officers and policemen of said police force, as in fact and in law, a reappointment for a succeeding term of four years; and relator avers that he and his several assignors were thus upon the expiration of their first and each succeeding term lawfully reappointed to their respective offices and entitled to the certain tenure of office for four years in each and every term of their service as such. And that relator and his

several assignors had entered upon and were engaged in a faithful discharge of the duties of a term of office of four years when they were wrongfully discharged as aforesaid.''

The reply denies the acquiescence or voluntary abandonment claimed, and also denies that relator believed the Veteran's Act of 1895 to be constitutional. As to laches, the reply sets up that one Chapman, who was dropped at the same time with relator, instituted a suit to test the validity of the action of the board, and that relator contributed to the expense of that suit and waited until it was decided before instituting this action. The reply denies that the action is barred by limitation. As to the claim of Marcus Blair the reply admits the allegations of the return, that he was appointed a patrolman on June 8, 1871, was *reduced* to turnkey on August 1, 1893, and dropped from the rolls on March 26, 1895, but denies that he was a mere *locum tenens* at the time of his discharge, and alleges that he was at that time engaged in the service of his first term as turnkey and was discharged before the expiration of his said term.

At the trial it was agreed that the facts, dates, etc., set forth in the return were correct, and that the relator stood upon the facts alleged in the return, except as to the question of acquiescence, and as to the custom of the board in making appointments, as to which evidence was submitted, the sum of which was that relator did not know of the Chapman case until two or three years after it was instituted; that he and others contributed to the expense of the case to test the constitutionality of the Veteran Policeman's Pension act (State ex rel. Heaven v. Ziegenhein, 144 Mo. 283); that on being retired on half pay, relator believed the law to be constitutional, and expected to receive the pension; that he went to see some of the commissioners to find out why he was dropped, and to see whether he could get re-instated, and they refused to talk; that relator

brought this suit in his name for the nine others by their verbal consent and agreement, they having contributed to the costs; that the agreement was that "it was all left to Mr. Wheless to bring all the suits together:" that John F. Hess tried to get back on the force by talking to two of the commissioners and making an application to be reinstated; that Marcus Blair asked his captain and the chief of police why charges were not preferred against him, and they told him "a turnkey was not considered a police officer and had no right to charges;" that he made no written agreement or assignment of his claim to relator, and never sold his claim to relator and never received any consideration for any assignment, but supposed the suits were all to be brought in relator's name; that except under the Rainwater and Lutz boards, the policemen never received any commissions, and when their original terms expired, they just continued to hold on and to perform the duties of patrolmen.

The court entered judgment for the relator as to his claim and those of Hess and Blair, and made the writ peremptory for an aggregate sum of $8,656.74. From this judgment, the defendants appealed to this court.

Counsel for relator bottom the case upon the proposition that under the Metropolitan Police act, a policeman is appointed for a term of four years, and if he is faithful in discharging his duties he is absolutely entitled to a preference when the board comes to make an appointment for another term, and that the custom of the board was not to reappoint but to allow the incumbent to hold over, and that this was tantamount to an appointment by implication for a new term of four years, and therefore the incumbent could be removed only for cause and upon charges, notice and a hearing during such implied term, and that relator and those he represents, except Blair, were thus originally appointed for a term of four years and impliedly reap-

pointed for various successive terms of four years, and were discharged during the last of such implied terms, and hence are entitled to the pay that is incident to the office, from the date of the discharge until the expiration of such implied term.

The correctness of this contention must be established in order to give relator, and those similarly situated, any standing in court. The contention rests principally upon the case of State ex rel. Campbell v. Board of Police Commissioners, 14 Mo. App. 308; s. c., 88 Mo. 144, while the claim of Marcus Blair is founded largely upon the case of State ex rel. Chapman v. Walbridge, 153 Mo. 194. As those two cases are essentially different, the two classes of cases falling thereunder will be considered separately.

As to the first, that is, all those who hold by virtue of such implied reappointments.

An examination of the Campbell case, supra, will demonstrate that it does not furnish any support whatever for the position taken in this case. The Campbell case was this: Campbell was appointed chief of police, but no term of office was fixed by the board. Afterwards, in April, 1883, an order was made by the board that he be *continued* as chief of police, but still no definite term was specified. In October, 1883, the board rescinded its order and declared the office vacant. Campbell sued out a writ of certiorari. The St. Louis Court of Appeals quashed the order of October, 1883, which had the effect of leaving Campbell in office. The reasoning employed by the Court of Appeals was that the act required the policemen (the privates) to be appointed for four years, and gave them the preference as to reappointment if they faithfully performed their duties, and this was intended to give a fixed and stable tenure of office, and prevent them being removed for political reasons or from whim or caprice; that the Constitution permitted a term of four years for officers; that the police act provided that the officers of

police should be appointed for such time as the board should determine; that public policy required that the tenure of office of the officers should be no less fixed and stable and their liability to removal should be no less guarded against than that of the privates, and that the board by failing to fix a term of office for the officers of police could not evade the policy of the law and make the officers hold subject to the pleasure of the board, with the possibility of removal by the then board or its successors, for political reasons or from whim or caprice, but that the courts would imply an appointment of the officers for a term of four years. And this court affirmed that judgment, approved the reasoning employed and characterized it as "unanswerable."

But even this case does not support the contention of the relator in the case at bar. For this is the case of a policeman, whose term is fixed by the act and did not need any judicial implication to create it. Here the incumbent served the full term which the act guaranteed to him. In addition he served more than sixteen years after his original term expired. He, therefore, enjoyed official life for a time more than equal to five official terms. He was expressly appointed but once. He claims he was impliedly appointed for four successive terms of four years thereafter, and that he served all that time. His claim now is that his fifth term by implication was cut off before it expired, and for this he brings this action and claims the salary incident to the office for a period of three years, five months and twenty-nine days, aggregating $3,497.23. In other words, he claims that his fifth implied reappointment occurred, *ipso facto,* on April 16, 1895; that he was only allowed to serve six months and one day of that four-year implied term, and therefore he is entitled to be paid for the three years, five months and twenty-nine days he was entitled to serve.

There is no possible similitude between this case

and the Campbell case. In the Campbell case, there was no question involved of an implied reappointment after the expiration of the original term of office, but only a question as to what was the duration of the original term.

What is said in the Campbell case as to the duration of the term of office of a policeman and his right to be preferred by the board in making new appointments, was purely *arguendo,* not at all necessary to the decision of the facts in judgment in that case, and therefore is not controlling authority in this case.

Aside from this, however, the decision in the Campbell case was expressly repudiated and its reference to the constitutional limitation of office to four years (sec. 14 of art. 9) declared to be merely *obiter,* in State ex rel. v. Johnson, 123 Mo. 1. c. 51.

In that case it was expressly held that it was not a mandatory public policy in this State that all officers —there, a chief engineer of the fire department of St. Joseph—should hold office for a definite term, and not be subject to removal at the pleasure of the appointing power.

In addition to this, however, it is too plain to admit of serious discussion that the reasoning employed in the Campbell case is fundamentally fallacious, and that the conclusion reached in that case could only have been reached by the unwarranted assumption of legislative powers by the court.

The police act fixed the term of office of the privates, but left the board to fix the term of office for the officers. The board did not do so. But the court did. That is, the court declared that the board had not performed the duty that the law imposed upon it, and, therefore, the court performed the duty for it, and by analogy fixed the term of the officers the same as that of the privates. There can be no two minds that this amounted to judicial legislation. If the law imposed the duty upon the board to fix the term of office of the

officers, and if the board refused or neglected to perform that duty, the board could have been prosecuted for misconduct in office or "the spur of mandamus" could have been applied to compel them to do their duty, but as the doing of that duty involved a discretion by the board as to the term to be thus fixed, the court could not either compel the board to fix any specific term or fix the term itself. Both were beyond judicial control. The court in the Campbell case fixed the original term of the chief of police, and in so doing it clearly exceeded its powers. Therefore, if that case was applicable to this case, and if it had not already been substantially overruled in the Johnson case, supra, we would have no hesitation in refusing to follow it in this case.

This leaves this case without any supporting precedent, and it is therefore a case of first impression in this State, and must be decided upon its own merits.

That class of decisions which relate to *de facto* officers, throw no light on this case. A *de facto* officer is one who is in office, is recognized by the public as an officer, whose acts are acquiesced in by the public, and yet who has no legal right to the office. Such is not the case here.

The relator must recover because he was improperly deprived of an office to which he was legally entitled, or he cannot recover at all. He was legally entitled to the office of policeman for a term of four years beginning on April 16, 1895, because he was reappointed to such a term, by implication, or else he was a mere *locum tenens,* that is, he had served out his original term and was holding the office until it suited the pleasure of the appointing power to appoint a successor.

The law is firmly settled in this State that an officer who has served his full term, holds thereafter as a mere *locum tenens* until his successor is appointed or

until the appointing power chooses to remove him. [State ex rel. Withers v. Stonestreet, 99 Mo. 361.]

In that case, it was expressly held that "where the term of office of the incumbent *has expired,* and where he is simply holding over at the pleasure of the executive, . . . the power of removal is incident to the power of appointment, without cause shown, or notice given or hearing had. [Ex parte Hennen, 13 Pet. 230; Field v. Commonwealth, 32 Pa. St. 478; Keenan v. Perry, 24 Tex. 253, and cas. cit.] In such cases, also, there is no restriction upon the power of the executive, such as there would be, were he to attempt the removal of the incumbent, the duration of whose term of office is fixed by law, which term has not expired. In the latter case, the manner provided by law would have to be pursued before a removal could be effected." This case was cited, approved and applied in State ex rel. Chapman v. Walbridge, 153 Mo. 194.

Counsel for relator, however, calls attention to the fact that section 6 of the police act provides that "any policeman whose term of service shall expire, and who, during his appointment, shall have faithfully performed his duty, shall, if otherwise qualified, be preferred by the board in making their new appointments," and claims that this provision is mandatory upon the board, and upon this he builds the claim that the relator was absolutely entitled to reappointment, and hence he contends that the relator was actually reappointed by implication for a new term of four years, just as soon as his original or prior implied terms expired.

The conclusion, however, does not flow from the premises. The act does so require and it may be conceded to be mandatory. But this does not amount in law to a reappointment. Under this act if the relator had faithfully performed his duty and was entitled to be preferred for reappointment, this alone would not be tantamount to a reappointment. For if it was, then it

would necessarily follow that a policeman would only have to perform his duty faithfully and he would *ipso facto* be reappointed every four years, as long as he lived. If this was true, the board would have no discretion. The term of office would not be for four years, but the legal effect of such a construction of the act would be that a policeman would be appointed for life or during good behavior, and that portion of the act which provides that he shall be employed to serve for four years would be meaningless. This is clearly not the meaning of the act. The power to determine whether a policeman has faithfully performed his duties is necessarily vested by the act in the board, and is not subject to review by the courts. Having this power, the board may appoint some one else to the place, and the courts cannot control that action. The law gives the incumbent the preference, but it does not give him an absolute, unqualified right, to reappointment. The power to appoint carries with it the right to determine which of two applicants is the better fitted for the place. The provision of the act referred to can only mean that if everything else is equal, the preference shall be given to the incumbent. If the lawmakers had intended to confer upon a policeman a continued right to reappointment, upon the faithful performance of duty, they would have made the tenure of office for life or good behavior, and not for four years, with a direction as to a preference in making new appointments. There is nothing in the letter of the act, nor in the public policy of the laws of this State, nor in the adjudicated cases in this State, that gives any color or countenance to the contention of the relator that he was reappointed by implication. On the contrary, under the rule laid down in the Stonestreet case, he was a mere *locum tenens* after the expiration of his original term, and the fact that he was allowed to hold over for sixteen years, six months and one day after the time for which he was originally appointed, instead of being

gratefully appreciated by him, has been contorted into a claim of right to hold for three years and a half longer. By the same measure, he would be entitled to hold on as long as he lives.

If this was the law, the police force would become an asylum for the old and infirm, the board upon whom the primary duty of exercising the police power rests, would be subject to change, but the privates would hold on as long as they live. It needs no fervid imagination to picture the baneful consequences that would flow from such a condition. Certainly such a holding would be carrying the idea of stability of tenure to a *reductio ad absurdum.* While stability of tenure of office is in some respects good policy, the efficiency of the officer is of vastly more importance, and the fear of summary removal is a powerful stimulus to faithful, prompt and efficient discharge of duty.

The relator has already enjoyed a tenure of office four times longer than he had any legal right to it. He has feasted upon favor until he has grown to look upon the office as his right. Both he and Hess were clearly hold-overs subject to removal, without cause, notice or hearing, at any time the board saw fit. The judgment in their favor is wrong and must be reversed.

This leaves for determination the claim as to Marcus Blair. It is conceded that he was first appointed a patrolman on June 8, 1871, was reduced to turnkey August 1, 1893, and was dropped from the rolls March 26, 1895, and it is claimed that he is entitled to $1,830 for the unexpired term of 28 months and 5 days.

The defendants contend that the relator is not entitled to a peremptory writ for this, because Blair alone is entitled to sue for it. On the other hand, the plaintiff contends that he is entitled to maintain the action under the statute (secs. 540 and 541, R. S. 1899) which allows a trustee of an express trust to maintain an action.

The statute permits a trustee of an express trust to sue in his own name without joining with him the person for whose benefit the suit is prosecuted. But while this is true, it is likewise true that section 3416, Revised Statutes 1899, provides: "All declarations or creations of trust shall be manifested and proved by some writing signed by the party who is, or shall be, by law enabled to declare such trusts, or by his last will, in writing, or else they shall be void, and all grants and assignments of any trust or confidence shall be in writing, signed by the party granting or assigning the same, or by his or her last will, in writing, or else they shall be void."

Upon this record, it cannot fairly or reasonably be contended that the relator is the trustee of an express trust of which Blair is the *cestui que trust*. It is admitted, and proved by the evidence adduced by the relator, that there was no writing executed; that there was no consideration paid to Blair by relator or any one else for a transfer of his claim; that Blair never sold his claim to relator and never intended to do so; that Blair will receive the fruits of the litigation; that there was in reality no assignment or transfer by Blair of his claim, and that the action was brought by relator for himself and his fellows purely as a matter of economy.

In the case of Rector, Church Wardens and Vestrymen of Mount Calvary Church v. Albers, 174 Mo. 331, it was held that an express trust could be created, under this statute, only by a writing. This being true, the relator is not a trustee of an express trust, either in fact or in law. The statute requires all actions to be prosecuted in the name of the real party in interest, the exception being made as to trustees of an express trust. The relator is neither the real party in interest nor is he a trustee of an express trust as to the claim of Blair, and hence he is not entitled to maintain any

action for such claim. Blair alone could maintain the action.

But aside from this there is another fatal infirmity underlying the claim of Blair, which puts him in the same boat with the relator and all the others. Blair was appointed a patrolman on June 8, 1871, for a term of four years. He served his full term, and after the expiration thereof, he continued to serve as a mere *locum tenens* for seventeen years, one month and twenty-three days thereafter. Then he was *reduced* to turnkey on August 1, 1893. He served as turnkey from August 1, 1893, until March 26, 1895. He thus was appointed for a term of four years, and actually served twenty-three years, nine months and sixteen days. He is not satisfied with this enlargement by sufferance of his term of office, but now claims that he is entitled to pay for twenty-eight months and five days more, at sixty-five dollars a month (the salary of a turnkey) amounting to eighteen hundred and thirty dollars and eighty-three cents.

This claim is based upon the contention that when Blair was *reduced* to turnkey on August 1, 1893, that was, *ipso facto,* equivalent to his appointment to the office of turnkey for a term of four years from August 1, 1893, and that he could only be removed during that term for cause, upon charges preferred, and after a hearing, which was not done in this case.

This contention is based upon the further idea that when a patrolman who receives a salary of eighty-three and a third dollars a month is *reduced* to the rank of a turnkey, who receives only sixty-five dollars a month, such reduction in rank constitutes a new appointment, to a new office, for a new term of four years. This is all true, except the deduction as to the duration of the term of a turnkey. A turnkey is provided for by section seven of the Police Act of 1861. Like the chief of police, a turnkey is to be appointed for such time as the board shall determine. It does not appear

that the board fixed any term for a turnkey. Upon the faith of the Campbell case however, it is claimed that a term of four years must be implied. But as herein pointed out, the Campbell case is fundamentally erroneous in so holding. Hence, even if being reduced in rank from a patrolman to a turnkey constitutes a new appointment to. a new office, it is still true that there was no term fixed for a turnkey, and therefore he held at the pleasure of the appointing power, and, hence, he was deprived of no vested right to any definite term, when he was removed or dropped from the rolls on March 26, 1895:

However, the result is the same whether it be considered a reduction or promotion in rank to be changed from a patrolman to a turnkey. If the change is made during the continuance of the original term, and if the officer consents to or acquiesces in the change, he gives up the certainty of the unexpired part of his fixed term as a patrolman, for the uncertainty of an unfixed term as a turnkey, which is a mere holding at the pleasure of the board. [State ex rel. Chapman v. Walbridge, 153 Mo. l. c. 201.]

It is very evident upon the face of the act itself that it was modeled after the organization of an army. The act creates a board of commissioners, and charges them with the duty, and vests them with the power, to enforce the police laws of the State and city, and in order to carry out their duty, it gives them authority to "appoint, enroll and employ" a police force. It provides for privates and for officers. Among the latter for a chief, for three captains, three lieutenants, not exceeding twelve sergeants, and four turnkeys. Section 11 of the act provides that: "Whenever any vacancy shall take place in any grade of officers, except the chief, it shall be filled from the next lowest grade, if competent men can be found therein." Section 8 of the act fixed the monthly pay of the officers and men as follows: captains, one hundred dollars; lieutenants,

eighty-five dollars; sergeants, eighty dollars; ordinary policemen and detectives, seventy-five dollars; and turnkeys, fifty dollars. Thus a turnkey is classed as the lowest in rank and receives the smallest pay. When a policeman is changed to a turnkey, it amounts to a reduction in rank and in pay. When a vacancy occurs in one grade it is required to be filled from the next lowest grade, if competent men can be found in such lower grade. A turnkey, therefore, is in line for promotion to the grade of policeman or detective, and a policeman or detective is in line for promotion to the grade of a sergeant, a sergeant to a lieutenant, and a lieutenant to a captain.

The term of the privates or ordinary policeman is fixed at four years. But the term of an officer is left to be fixed by the board, and has never been fixed. If a policeman or private is promoted to be a sergeant, he relinquishes his fixed term as a private for an unfixed term as a sergeant, and is liable to be discharged at the pleasure of the board. Under the act, the board is given no express power to reduce an officer in rank, nor to reduce a policeman to the rank of a turnkey. But section 11 gives the board power to make such rules and regulations as they judge necessary, not inconsistent with the act, for the appointment, employment, uniforming, discipline, trial and government of the force.

If a private in the army enlists for three years, and after serving one year is promoted to the rank of a corporal, and after serving one year as a corporal, is promoted to the rank of a sergeant, such promotions do not constitute new enlistments for new terms of three years each, but they are merely the rank or grade he rises to during the term of his enlistment. But, on the other hand, a policeman is employed for a term of four years; he is liable to be reduced in rank to a turnkey or promoted in rank to a sergeant, a lieutenant, a captain, or even a chief, but if he is so reduced or pro-

moted, he loses his fixed tenure of office, and takes the new grade or rank for such a time as the board may determine, and if the board fixes no term, he takes his new grade for such a term as the pleasure of the board may allow. If he does not like this arrangement, his remedy is to stand upon his rights and insist upon continuing as a policeman for his fixed term, with the benefit of the provision that he can only be removed for cause.

A careful study of the spirit and policy of the act makes it reasonably clear that this is the correct construction to place upon the act, and that in this respect the act is different from the rule that obtains in army circles.

Applying these rules to Blair's claim, it results in holding that on August 1, 1893, when Blair was reduced from the rank of a patrolman to the grade of a turnkey, he was merely a *locum tenens* (having then served over twenty-two years under an appointment for only four years), and that when he accepted or acquiesced in the reduction of rank, to turnkey, for which no term was fixed by the board, he took the place with the right of the board to discharge him at pleasure. Hence when the board discharged him on March 26, 1895, it did only what it had a legal right to do, and he ceased to have any right to the office and hence has no right to the salary attached to the office.

Blair's case finds no support whatever in the case of State ex rel. Chapman v. Walbridge, 153 Mo. 194. In that case, Chapman was appointed a patrolman on March 19, 1889. On January 5, 1892, at his own request, he was reduced to the rank of turnkey. On June 15, 1893, he was promoted to the rank of patrolman, to take effect July 1, 1893, and served as such until October 22, 1895, when the minutes of June 15, 1893, were changed so as to make them read that he was re-

instated as a patrolman and not reappointed, and was then dropped from the rolls.

It was held that by accepting the grade of turnkey, he lost his unexpired term of patrolman. But that the effect of the order of June 15th, promoting him from turnkey to patrolman, was to re-employ him as a policeman, and that it was a new employment for a term of four years from July 1, 1893, and in no wise depended upon his original appointment as a patrolman or his subsequent reduction to the grade of turnkey.

It is apparent, therefore, that the case at bar is not at all like that case, and the position here taken by the relator is affected by that case only so far as it decides that the acceptance of the office of turnkey by a patrolman is an abandonment of the office of patrolman, and of any right to any unexpired term as such, and that the turnkey holds only for such term as is provided and fixed for the office of turnkey, which as we have seen, was for no specific time, but only during the pleasure of the board.

The premises necessarily compel the conclusion that Blair has no valid claim to any salary, but that his discharge ended his right to the office and to the salary.

For these reasons, the judgment of the circuit court is reversed, and the writ of mandamus quashed.

All concur.