(47 Misc. Rep. 275.)

PEOPLE ex rel. STOKES v. TULLY, Commissioner of Public Charities.

(Supreme Court, Special Term, New York County. May, 1905.)

1. MUNICIPAL CORPORATIONS—EMPLOYÉS—SALARIES.

In 1900 the position of "examiner of dependent children" in the city of New York was classified in the "ungraded service," and the salary was fixed at $1,000 a year. Relator was appointed to the position in 1900, and on April 28, 1902, the board of estimate and apportionment, whose power in the premises expired on May 1st of that year, duly continued his salary at the same amount. December 29, 1903, the board of aldermen, by resolution duly approved by the mayor, and acting upon the recommendation of the board of estimate and apportionment, made pursuant to Greater New York Charter, § 56, requiring the board of aldermen to fix salaries upon the recommendation of the board of estimate and apportionment, fixed the salary of the examiner of dependent children at $1,200. *Held*, that relator was entitled to the salary fixed by the board of aldermen, without any further step being taken by the head of his department, who, by section 1543 of the charter, is granted certain powers, but is, in effect, denied the right to fix salaries.

2. SAME.

Nor was the fact that at the date of the resolution of the board of aldermen the position of examiner of dependent children had been transferred within the same competitive class to the position of examiner of charitable institutions material.

3. SAME—PROMOTIONS—CIVIL SERVICE LAW—APPLICABILITY.

Civil Service Law (Laws 1899, p. 805, c. 370) § 15, requiring promotions to be based on merit and competition, and defining an increase in salary as a promotion, is without application to the position of examiner of charitable institutions, which is classified by the municipal civil service commission in the "ungraded service."

Application by the people, on relation of George W. Stokes, for a peremptory writ of mandamus against James H. Tully, commissioner of public charities of the city of New York. Writ allowed.

Mayer & Gilbert (Julius M. Mayer, of counsel), for relator.
John J. Delany, Corp. Counsel (W. B. Crowell, of counsel), for defendant.

LEVENTRITT, J. This is an application for a peremptory writ of mandamus. Material facts are undisputed. In April, 1900, the relator was appointed from the civil service eligible list to the place of examiner of dependent children for the borough of Manhattan. In November, 1903, the designation was, with the consent of the municipal civil service commission, changed to "Examiner of Charitable Institutions." This position is in what is known as the ungraded service, being specifically there classified. Rules and Classifications of the Municipal Civil Service Commission, rule vi, subd. 2; Appendix,

pt. 1, group 2. The relator's salary was originally $1,000, and was continued at that figure by a resolution of the board of estimate and apportionment, adopted on April 28, 1902, acting pursuant to the power vested in it for a limited time. Laws 1902, pp. 1067, 1068, cc. 435, 436. In September, 1903, the then commissioner of public charities urged upon the board of estimate to establish, with the concurrence of the board of aldermen, "the following new grades of salaries: * * * Examiner of dependent children, $1,200 per annum; examiner of charitable institutions, $1,200 per annum." At the time of this request, the former title had not been changed to the latter to make all examiners of one kind. Acting upon the commissioner's request, the board of estimate, on December 18, 1903, adopted a resolution "recommending to the board of aldermen, in accordance with the provisions of section 56 of the Greater New York Charter, that the salaries of the following positions in the Department of Public Charities * * * be fixed as follows: Examiner of dependent children, $1,200 per annum; examiner of charitable institutions, $1,200 per annum." Thereafter, on December 22, 1903, the board of aldermen adopted a resolution concurring in that of the board of estimate and apportionment, and "fixes the salaries of the positions of examiner of dependent children and examiner of charitable institutions in the Department of Public Charities at the rate of twelve hundred (1,200) dollars per annum each." On December 29, 1903, the resolution became and had the effect of law by the approval and signature of the then mayor. The relator claims that he became entitled to the increased salary from January 1, 1904. On that date the defendant was appointed. He has certified the relator's salary to the comptroller at the annual rate of $1,000, and, though duly requested, has refused to certify it at the higher rate.

I am of the opinion that the refusal was not justified. Under the Consolidation Act (Laws 1882, p. 1, c. 410) and the charter as it existed prior to the comprehensive amendments in 1901, the power to fix salaries of subordinates rested in the heads of departments. The charter, in its original form, gave power to the board of aldermen, or, rather, to the municipal assembly, as it was then called, to fix the salaries of those whose compensation was paid out of the city treasury, without making it mandatory upon it to do so, or interfering with the authority in this regard of the heads of the departments. Section 56. The Charter Revision Commission in its report dated December 1, 1901, seeking a remedy to curtail the expenditures of the city since consolidation, that had grown out of all proportion to the expenditures of the various constituent parts prior to consolidation, recommended that the determination of the amount of salaries to be paid ought not to be vested in the appointed heads of departments, but should be lodged absolutely in the officials chosen by the voters of the city itself. The incidental power of the city Legislature was therefore made mandatory and exclusive. "We propose," say the commissioners, "to take away absolutely from every head of department the power to fix the salaries of his own subordinates." Report of the Charter Revision Commission, 49. Section 56 of the charter was consequently amended to read, so far as here material:

"It shall be the duty of the board of aldermen upon the recommendation of the board of estimate and apportionment to fix the salary of every officer or person whose compensation is paid out of the city treasury other than day laborers, and teachers, examiners and members of the supervising staff of the department of education, irrespective of the amount fixed by this act, except that no change shall be made in the salary of an elected officer or head of a department during his tenure of office."

This particular section was again amended in 1902 (page 1067, c. 435) by a provision to the effect that all salaries as fixed on January 1st of that year should continue in force until fixed by the board of aldermen, except as might be otherwise determined by the board of estimate and apportionment prior to May 1, 1902, under section 10 of the charter. This exception was incorporated so as to harmonize the powers granted in section 56 with the power granted to the board of estimate and apportionment for a limited time by a simultaneous amendment of section 10. Laws 1902, p. 1068, c. 436. That amendment gave the board of estimate and apportionment the power, between January 1 and May 1, 1902, upon the recommendation of the mayor or other designated officers, to fix salaries. The purpose of this last amendment was to permit the rearrangement and reclassification of salaries within a specified time. Thereafter the power was to vest again exclusively in the board of aldermen, as theretofore, acting upon the recommendation of the board of estimate and apportionment.

It will be noted from the statement of fact that the salary of the relator or of those holding a similar position, originally fixed by the head of the department at $1,000 yearly, was not diminished, but continued by the board of estimate and apportionment under its temporary powers, as evidenced by the resolution of April 28, 1902. When, therefore, the power of that board to fix salaries expired on May 1, 1902, the only power that could increase or diminish salaries was the board of aldermen. The proceedings were therefore regular, and strictly in accordance with statute, when in September, 1903, the then commissioner of public charities applied to the board of estimate and apportionment for a recommendation to increase the salaries of the examiners in his department, when that board recommended the increase in due form, and when the board of aldermen acted upon the recommendation and fixed the salaries. The resolution, which was duly approved by the mayor, specifically "fixes the salaries of the positions of examiner of dependent children and examiner of charitable institutions * * * at the rate of $1,200 per annum each." The fact that at the date of the resolution the position of examiner of dependent children had been transferred within the same competitive class to the position of examiner of charitable institutions is immaterial. The effect of the resolution was to fix the salaries of the latter class of examiners (the sole kind at that time in the department) at the annual sum of $1,000. After the board had acted, there was but one salary for the position. Although it in terms fixed the salary of the "position," while the charter calls upon it to fix the salary of "every officer or person," the inference is fair, especially when considering the intention to deprive the head of the department of control over salaries, that the salary of the position once fixed, every person or officer in that position is, ipso facto, entitled to that salary. The head

of a department cannot fix a salary. Section 1543 of the charter, defining the duties of the heads of departments and their control over subordinates, grants them large powers, gives them the right to determine the number and the duties of all officers, clerks, employés, laborers, and subordinates, subject to a single limitation; but it again reiterates the removal from their control of all questions as to compensation by providing that the "salaries and wages * * * shall be such as shall be fixed by the board of aldermen upon the recommendation of the board of estimate and apportionment in the manner provided in this act." My conclusion, therefore, is that with the exclusive power to fix salaries vesting in the board of aldermen, with the heads of departments shorn of all control over salaries, the legal incumbent of a position is entitled to the salary fixed by the board of aldermen, without any further step being necessary on the part of the head of the department.

It remains to consider the question in the light of the Civil Service Law. If the increase of salary amounts to a promotion, then there must be a compliance with that law by taking a further competitive examination before the erstwhile incumbent becomes legally entitled to the increase. While the civil service rules merely establish a classification, and do not fix or control salaries (People ex rel. Ludholz v. Knox, 58 App. Div. 541, 69 N. Y. Supp. 602; Powell v. City of New York, 65 App. Div. 421, 72 N. Y. Supp. 990), every question of an increase of salary must be considered with regard to section 15 of the State Civil Service Law (Laws 1899, p. 805, c. 370), which requires that promotions shall be based on merit and competition, and that for the purposes of the section "an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified shall be deemed a promotion." If the relator's office or position was classified for a grade the compensation of which was limited to $1,000, then the increase would amount to a promotion, under section 15, and would not take effect unless he passed a competitive examination and otherwise complied with the legal requirements. An examination of "the scope of the rules in force hereunder" will show that the increase did not amount to a promotion. Under the rules and classification of the municipal civil service commission, the relator's position is in the competitive class; that is to say, the original appointment depends upon a successful competitive examination. For the purpose of regulating promotion where practicable, the competitive class shall be subdivided as follows:

"Part 1. All positions of whatever function, description, or compensation not included in any of the subdivisions following, to be known as the 'ungraded service.' * * * The positions in the foregoing parts, except part 1, shall for purposes of promotion be arranged in grades, which, so far as they shall have been established, shall be the grades fixed by law or ordinance, and which shall be as designated in the classification." Rule vi.

Turning to the classification, we shall find under part 1, "Ungraded Positions in Group 2. Positions of a Special or Miscellaneous Character"; that of "Examiner of Charitable Institutions"—the position occupied by the relator. In other words, there are no "grades" in the

ungraded positions under part 1, and there cannot, therefore, be an increase in the salary "beyond the limit fixed for the grade in which such office or position is classified." A mere increase in salary does not, ipso facto, constitute a promotion; it must be beyond the limit fixed for the grade. There are no grades in part 1, and consequently an increase in salary of a position classified in it, otherwise legally encompassed, becomes effectual, as the Civil Service Law commands no further preliminary requirements. Rule 15 of the local rules specifically exempts positions in part 1 from promotion tests. The ungraded service stands practically by itself so far as promotion is concerned, and my conclusion, therefore, is that section 15 of the State Civil Service Law has no applicability to the case at bar.

It follows that the sole power to grant the increase having legally fixed the salary of the relator's position, he became entitled to the salary from that day forth, and that it was incumbent on the defendant so to certify to the comptroller.

The writ should be allowed.