## GOLDING v. CITY OF NEW YORK.

(Municipal Court of City of New York, Borough of Manhattan,
Fifth District.   July 5, 1912.)

1. MUNICIPAL CORPORATIONS (§ 220*)—OFFICERS—SALARIES—RESOLUTIONS.

A resolution of the board of aldermen, approved by the mayor, fixing the salary of draftsmen in the department of bridges at $1,950 a year, adopted pursuant to Greater New York Charter (Laws 1901, c. 466) § 56, requiring the board of aldermen to fix salaries, fixes the salary of all draftsmen, and supersedes a prior resolution of the board of estimate and apportionment, fixing salaries at varying sums, adopted pursuant to then existing power to fix salaries.

- [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599–608;  Dec. Dig. § 220.*]

2. MUNICIPAL CORPORATIONS (§ 120*)—RESOLUTIONS—CONSTRUCTION.

A resolution of the board of aldermen of a city, adopted pursuant to statutory authority, must be interpreted according to its terms, where it is free from ambiguity, and contains no qualifications or exceptions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 274–280;  Dec. Dig. § 120.*]

3. MUNICIPAL CORPORATIONS (§ 220*)—OFFICERS—SALARIES—RESOLUTIONS—CONSTRUCTION.

Where a resolution of the board of aldermen, adopted pursuant to Greater New York Charter (Laws 1901, c. 466) § 56, fixes the salary of draftsmen in the department of bridges, letters of the commissioner of bridges, written prior or subsequent to the resolution, do not affect a draftsman's salary.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599–608;  Dec. Dig. § 220.*]

4. MUNICIPAL CORPORATIONS (§ 162*)—OFFICERS—SALARIES—ACCEPTANCE OF PART—WAIVER OF BALANCE.

The acceptance by a city officer of a salary less than that fixed by law is not a waiver of the statutory salary at a higher rate, though he signed the pay rolls reciting that the moneys received were in full payment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374;  Dec. Dig. § 162.*]

Action by Thomas W. Golding against the City of New York. Judgment for plaintiff.

Gettner, Simon & Asher, of New York City, for plaintiff.

Archibald R. Watson, Corp. Counsel, and Terence Farley, both of New York City, and William E. C. Mayer, of Brooklyn, for defendant.

SPIEGELBERG, J.   The plaintiff was employed in the department of bridges, as draftsman, from April 14, 1905, to May 14, 1907, and during such employment received salary at the rate of $1,500 a year.   Claiming that he should have received compensation at the rate of $1,950, he brings this action for so much of the difference as is not barred by the statute of limitations.   Some of the phases of the controversy involved in this action were discussed by the writer in an opinion handed down on April 15, 1912, in the case of Gill v. City of New York.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The plaintiff maintains that he should have been paid at the rate of $1,950 a year, pursuant to a resolution adopted by the board of aldermen on June 2, 1903, and approved by the mayor on June 9, 1903, concurring in a recommendation of the board of estimate and apportionment that the salary of draftsmen in the department of bridges be fixed at $1,950. The power of the board of aldermen to fix salaries is based upon section 56 of the Greater New York Charter, which, so far as applicable, reads:

"Except as in this section otherwise provided, it shall be the duty of the board of aldermen, upon the recommendation of the board of estimate and apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury other than day laborers, and teachers, examiners and members of the supervising staff of the department of education."

The defendant claims that, notwithstanding the resolution of the board of aldermen, it was the intention of the board that the salaries of some of the draftsmen in the department of bridges be fixed at $1,500 and $1,800 per annum, respectively. On April 30, 1902, the board of estimate and apportionment, in whom the power to fix salaries was lodged at that time, passed a resolution fixing the salaries of the individual employés of the department of bridges at varying sums. No salary was attached to the position of draftsman; but with one or two exceptions, where the names were left blank, evidently due to vacancies, the compensation of each employé was specifically given. It must be borne in mind that the resolution of April 30, 1902, was passed three years before the plaintiff was appointed to his position; and, of course, his name was not mentioned in the resolution at all.

The defendant's argument, if I understand it rightly, is that the resolution of the board of estimate of 1902, and that of the board of aldermen of 1903, must be construed together, with the result that the effect of the 1903 resolution was to create an additional class of draftsmen, receiving compensation at the rate of $1,950. I fail to see how any such construction can be put upon the resolution of 1903. It provides that the salaries in the position of draftsman shall be $1,950 per annum, and the class of draftsmen is mentioned generically. Neither the names of the employés nor the number thereof were given. I think it is quite clear that the resolution of 1903 supersedes the one of 1902, and that, therefore, the compensation of all draftsmen should have been at the rate of $1,950.

[2] The resolution of the board of aldermen is free from any ambiguities, and contains neither qualifications nor exceptions. Under the circumstances, the resolution of 1903 must be interpreted according to its terms, without resort to other means of interpretation. In People ex rel. Westchester Lighting Co. v. Gaus, 199 N. Y. 147, at page 149, 92 N. E. 230, at page 231, the court says:

"Doubtless the legislative intent is inartistically expressed; but, if that intent can be spelled out from the words of the statute, effect must be given to it. The language being explicit, and the words being free from ambiguity, it is not allowable to resort to other means of interpretation."

To the same effect is Johnson v. Hudson River R. R. Co., 49 N. Y. 455, and Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532.

It would be a most unwarranted construction to hold that the resolution of 1902 was still in force after the passage, a year later, of the resolution of 1903, which in explicit terms fixes the salaries of all draftsmen at $1,950 a year. In People ex rel. Stokes v. Tully, 108 App. Div. 345, 95 N. Y. Supp. 916, 1153, Leventritt, J., whose opinion in the court below was adopted by the Appellate Division, traces very lucidly the history of the power of the board of estimate and apportionment and of the board of aldermen, respectively, to fix salaries. In that case the salary of examiner had been fixed by the board of estimate and apportionment at the rate of $1,000 a year, and after May 1, 1902, the board of aldermen fixed it at $1,200. The court, at page 348 of 108 App. Div., page 918 of 95 N. Y. Supp., says:

"It will be noted that the salary of the relator, * * * originally fixed by the head of the department at $1,000 yearly, was not diminished, but continued by the board of estimate and apportionment under its temporary powers, as evidenced by the resolution of April 28, 1902. When, therefore, the power of that board to fix salaries expired on May 1, 1902, the only power that could increase or diminish salaries was the board of aldermen."

And at page 349 of 108 App. Div., page 918 of 95 N. Y. Supp., discussing the resolution of the board of aldermen, the opinion continues as follows:

"The effect of the resolution was to fix the salaries of the latter class of examiners—the sole kind at that time in the department—at the annual sum of $1,200. After the board had acted, there was but one salary for the position."

The situation in this case is very similar. I am of the opinion that after the resolution of June, 1903, there "was but one salary for the position" of draftsman in the bridge department.

[3] I fail to see how the letters written by the commissioner of bridges prior to the June, 1903, resolution, or, for that matter, subsequent thereto, can in any way affect the salary to which the plaintiff is entitled. Since 1902 the heads of departments have been deprived of all control over the salaries of their employés, although power to appoint and remove still rests with them. Greater New York Charter, § 1543; People ex rel. Stokes v. Tully, supra.

[4] I am also of the opinion that the point, raised by the learned corporation counsel, that the plaintiff, in accepting a lower salary than $1,950, has waived his claim to that salary, is not well taken. It is true that the plaintiff during his employment signed the municipal pay rolls, containing a statement to the effect that the moneys received by him were in full payment; but the law is well settled that the acceptance of a salary less than that fixed by law is not a waiver of a statutory salary at a higher rate. This is settled by numerous authorities. Among others see People ex rel. Satterlee v. Board of Police, 75 N. Y. 38, Moore v. Board of Education, 121 App. Div. 862, 106 N. Y. Supp. 983, and McGrade v. City of N. Y., 126 App. Div. 362, 110 N. Y. Supp. 517. In Grant v. City of Rochester, 79 App. Div. 460, 80 N. Y. Supp. 522, affirmed on the opinion of the court below

in 175 N. Y. 473, 67 N. E. 1083, it appeared that the plaintiff agreed with the mayor of the defendant in accordance with a resolution of the common council to accept $3,600 per annum, instead of $4,000, the amount fixed by the board of estimate and apportionment of the defendant, which at the time had the power to fix salaries. The court held that the plaintiff's acquiescence in receiving the lesser amount did not estop him from recovering the remainder of his salary, and based its conclusion upon the rule that the salary belonged to the plaintiff as an incident to his office, and that the incumbent of an office has no right to enter into an agreement with another officer to accept a reduced salary.

The recent case of Byrnes v. City of New York, decided by the Appellate Division of the Second Department on April 12, 1912, and reported in 150 App. Div. 338, 134 N. Y. Supp. 759, has no application to this case. The claim in the Byrnes Case was based upon the failure of the plaintiff to receive the prevailing rate of wages in the occupation of bricklayer, and it was held that his acceptance of his wages without protest to the appointing power precluded him from maintaining the action. The plaintiff in the Byrnes Case was not a municipal officer, but a laborer; whereas the plaintiff in this case is a municipal officer within the language of the cases above cited. Uvalde Asphalt Paving Co. v. City of N. Y., 149 App. Div. 491, 134 N. Y. Supp. 50. In addition, the wages of a bricklayer are not fixed by the board of aldermen, but by the appointing power. In fact, section 56 of the Greater New York Charter, which is above quoted, specifically excepts day laborers from the authority of the board of aldermen to fix salaries. The wages in the Byrnes Case were not fixed at all, except that they had to be in accordance with the prevailing rate, the determination of which is a question of fact in each particular case.

The defendant concedes that, if the plaintiff is entitled to judgment, the amount due him is $497.07, together with $5 interest; and, in the view that I take of this case, judgment must be directed for the plaintiff for that amount.