WILLIAM R. ORTHWEIN, Administrator of DANIEL A. CLAYTON, Appellant, v. CITY OF ST. LOUIS.

Division One, June 30, 1915.

1. COMPENSATION OF CITY SERVANTS: Fixed by Ordinance: Changed by Contract. The city of St. Louis had power in 1897, under its charter, to fix the compensation to be paid to those persons employed as inspectors of excavations in its streets; and if it, by ordinance, fixed their compensation at seventy-five dollars per month, the street commissioner had no power by

contract to fix it at a greater or less amount; and if the ordinance fixed their compensation at thirty cents an hour of actual work, they are not entitled to be paid seventy-five dollars a month.

2. ————: **Excavation Inspectors: Thirty Cents Per Hour.** The compensation of inspectors of excavations in streets of the city of St. Louis prior to July 29, 1897, was not controlled by sections 1834, 664, 1384 or 1336 of the Municipal Code, but by section 1335, which provided that "the pay of said inspector shall be at the rate of thirty cents per hour" and that "the time allowed the inspector shall be computed only for the number of hours he is actually inspecting the work." Those words do not mean that the city should be allowed thirty cents per hour for the services of the inspector while on the ground, as a recoupment out of the money which a person desiring to make an excavation in the street should deposit with the city treasurer as a special fund to be used by the street commissioner, and that the excavation inspector should be paid out of the city treasury, according to section 1336 which provides for the appointment of general inspectors with the approval of the president of the board of public improvements, or according to section 1384 which provides for sprinkling inspectors to be appointed with the approval of the mayor; on the contrary, said section 1335 fixed the pay which such excavation inspectors should receive at thirty cents per hour.

3. ————: ————: **Amendatory Ordinance 19036.** Ordinance No. 19036, by which the Municipal Assembly of the city of St. Louis in 1897 repealed old sections 1333, 1334 and 1336, did not either by express words repeal section 1335, which prescribed the compensation of excavation inspectors, nor by necessary implication prescribe for them a different compensation or a different method of employment than those prescribed by said section 1335, which fixed their compensation at thirty cents per hour. No such position as excavation inspector has been created by the Municipal Assembly otherwise than by section 1335, and it alone prescribes their duties and compensation.

4. ————: ————: **Not Appointed Under Other Sections.** It may be that under the broad provisions of sections 1333 and 1336 of the Municipal Code of St. Louis, the inspectors appointed thereunder may be used in inspecting excavation work in streets and be paid the compensation called for by them; but where the inspectors were not appointed to positions contemplated by those sections, they are not entitled to the compensation which they fix.

5. **ORDINANCES: Construction.** Ordinances, like statutes, are primarily to be interpreted according to the ordinary meaning of their words and the proper grammatical effect of their

arrangement. It will be presumed that the municipal legislatures are conversant with the simple rules of grammar and have expressed their will in apt terms, unless it is apparent in the ordinance itself that the application of such a presumption would be absurd, extravagant or repugnant to other provisions of law which must stand with it.

6. ———: ———: **Executive Practice.** Sometimes executive practice under an ordinance should be considered in arriving at the legislative intention. This rule is applied to those ordinances which are developed from actual experience in the management of complicated details of municipal administration; for, in such cases, the officer in charge of the work is in better position to arrive at a workable plan of doing such desultory work than is the court; since such ordinances are often the outgrowth of reports that they make to the municipal legislature.

Appeal from the St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

M. B. Levy and *Barclay, Orthwein & Wallace* for appellant.

(1) The fact that plaintiff Clayton and his assignors accepted payment, monthly, of a part of the salary due them for public service as inspectors (as fixed by the city ordinance) and gave monthly receipts therefor, does not bar the right to recover the residue of the lawful salary. People v. Police Board, 75 N. Y. 38; Grant v. Rochester, 175 N. Y. 473; Glavey v. United States, 182 U. S. 595; Golding v. New York, 140 N. Y. Supp. 1020. When the statutes invest a municipal corporation with power to fix compensation for public services, ordinances doing so must be treated as passed by the Legislature itself. Holman v. City, 155 Mo. App. 398. (2) It is not competent for one engaged in public service to make a contract to perform the service for a lesser sum than is fixed by law, such contract being against public policy as tending to impair efficient service; and such result cannot be brought about

by indirection, in paying the inspector less than his lawful salary and getting his receipt for the same. State v. Collier, 72 Mo. 13; Bowe v. St. Paul, 70 Minn. 341; Adams v. United States, 20 Ct. Cl. 115; People v. Board, 75 N. Y. 38; Trustees v. Walden, 15 Ala. 655; State v. Steele, 57 Tex. 200; Whiting v. United States, 35 Ct. Cl. 291; Kehn v. Board, 93 N. Y. 291; Settle v. Sterling, 1 Idaho, 259; State v. Purdy, 36 Wis. 213; Insurance Co. v. Brainard, 72 Iowa, 130; People v. Thornton, 25 Hun, 456. (3) Even if the so-called "settlement" with plaintiff Clayton and his assignors should be treated on the basis of private dealings (apart from public service) part payment of a liquidated debt will not discharge the residue even if so expressed. (a) Acceptance of a less sum for a greater, where the real demand is liquidated by agreement of the parties "or fixed by law," is not a discharge of the demand, for the obvious reason that the supposed discharge or release, in such circumstances, has no consideration to support it. Winter v. Railroad, 73 Mo. App. 194; Winter v. Railroad, 160 Mo. 159; Goodson v. Nat. Assn., 91 Mo. App. 352; Ireland v. Spickard, 95 Mo. App. 64. (b) The receipts for the money, month by month, were evidence only of payments to plaintiffs on account. They do not even purport to be in full or in discharge of all liability. They are far from conclusive and constitute no barrier to plaintiff's recovery on any theory of "account stated." Ireland v. Spickard, 95 Mo. App. 64; Kehn v. New York, 93 N. Y. 291; Heintz v. Pratt, 54 Ill. App. 616. (c) A new consideration is necessary to support such relinquishment of the debt. Wetmore v. Crouch, 150 Mo. 671; Riley v. Kershaw, 52 Mo. 224. (4) Salary for public service is not treated on the principles of ordinary contract. Bates v. City, 153 Mo. 18; State v. Walbridge, 153 Mo. 194; State v. Gordon, 245 Mo. 12. (5) The acts of the city in accepting pay (from holders of permits for excavations, etc.) for the services rendered by

these very plaintiffs, at the rate fixed for payment of
street inspectors, and in directing plaintiffs to perform
all the duties of inspectors, estop the city from deny-
ing that they were inspectors. Public corporations,
as other persons, are governed by the principles of
estoppel, within the scope of their lawful powers.
Simpson v. Stoddard County, 173 Mo. 421; Roe v.
Bank, 167 Mo. 406. But this issue is no longer vital,
as the referee has found that plaintiff and his assign-
ors were inspectors.

*William E. Baird* and *Truman P. Young* for re-
spondent.

(1) Paintiffs were not employed as inspectors in
the street department under ordinance 19036. This will
be obvious from a consideration of the terms of the or-
dinance and an examination of the testimony. (2)
The fact that the referee found that the plaintiffs were
employed under section 1335 of the Revised Ordinances
of 1892, while the defense contended that they were
employed as day laborers at $2 a day, does not help the
plaintiffs' case. In either event, they were not entitled
to recover anything, as there had been no deficiency
in their payment. Furthermore, plaintiffs must re-
cover upon the case stated in their petition or not at
all. Bagnell v. Railroad, 180 Mo. 463; Hesselbach v.
St. Louis, 179 Mo. 524; Yall v. Gillham, 187 Mo. 408.
(3) All municipal appointments to office must be in
writing. Ordinance 19036 required inspectors ap-
pointed under that ordinance to be appointed by the
street commissioner with the approval of the mayor.
The appointment, as well as the approval of the mayor,
must be in writing and preserved in the city records.
People v. Murray, 70 N. Y. 521; Railroad v. Water-
bury, 55 Conn. 19; Cooner v. Gilmore, 32 Cal. 75; 23
Am. & Eng. Ency. Law (2 Ed.), p. 34; Throop on Pub-
lic Officers, secs. 86-87. (4) The plaintiffs having ac-

cepted pay at $2 a day, and allowed their names to be carried upon the payrolls as day laborers at $2 a day, are now estopped from claiming more. Galbraith v. Moberly, 80 Mo. 487; Love v. Jersey City, 40 N. J. L. 459; Stagg v. Ins. Co., 10 Wall. 589; United States v. Garlinger, 169 U. S. 322; Baker v. Nachtrieb, 19 How. 126; United States v. Child, 12 Wall. 232; DeArnaud v. United States, 151 U. S. 483; Rau v. Little Rock, 34 Ark. 303; McInery v. Galveston, 58 Tex. 339; Cobbs v. Yonkers, 102 N. Y. 13; Byrnes v. St. Paul, 78 Minn. 205.

BROWN, C.—This suit was begun September 20, 1902, since which time Daniel A. Clayton, the original plaintiff, has died, and the cause has been revived and is now proceeding in the name of his administrator.

Mr. Clayton sued for himself and as assignee of twenty-one others of claims which depend substantially upon the same facts. Each is separately stated in the twenty-two counts of the petition, and they amount in all to $23,709, for which, with accrued interest, judgment is asked.

Each count is a fair type of all the others, and alleges, in substance, the appointment of the original claimant as inspector in the street department of the defendant city for the salary and hire of $75 per month prescribed and fixed by ordinance number 19036 of said city, the number of months he served in that capacity, the faithful discharge of his duties as such inspector during that time, his discharge without any fault of his own, the amount that he had been paid by the city on account of such services and the amount claimed as still due him. The provision of the ordinance upon which the claim is founded, as pleaded, is as follows:

"Section 1834. *Additional Employees of Street Department.* In addition to the officers hereinbefore

265Mo.36

specified, the street commissioner shall, with the approval of the mayor, appoint such additional surveyors, draughtsmen, rodmen, field hands and inspectors, overseers, clerks, mechanics, teams, carts and day laborers as may be required for the efficient working of his department, whose salaries and hire, excepting day laborers, teams and carts, shall be as follows: Surveyors, one hundred dollars per month; draughtsmen, seventy-five dollars per month; rodmen, sixty dollars per month; field hands, fifty dollars per month; inspectors, seventy-five dollars per month; overseers of street repairs and street cleaning, seventy-five dollars per month; clerks, seventy-five dollars per month.''

It also states the assignment to Clayton of each of the twenty-one claims upon which he declares as assignee.

The answer denies generally the allegations of the petition and avers as to each count that the original claimant therein was never appointed inspector by the street commissioner, nor was he appointed to any position with the approval of the mayor; that plaintiff and each of his assignors was employed by the superintendent of excavations for and in behalf of defendant as a day laborer, at the rate of two dollars per day for each day he worked, and that each month there was an accounting between him and the defendant, which thereupon paid the amount agreed between them to be due for such services, which the plaintiff accepted and received in full satisfaction therefor and receipted to the defendant in full for all sums due him, whereby his claim and demand was fully discharged. A full statement of each day's service during each month, and the amount paid therefor to each claimant, was filed with the answer.

Issue was joined by replication and the cause was referred by the court of its own motion.

The petition charges for services rendered during the months from April, 1897, to April, 1902, inclusive,

and the several counts cover periods of from five to fifty-six months each. The answer states the number of days each claimant was actually employed in each month in looking after the work of excavation. This averages all the way from nine days in the case stated in the thirteenth count, to twenty-nine days in the sixteenth count. Eight of the claimants, including the plaintiff, were employed or appointed before the passage of the ordinance, No. 19036, approved July 29, 1897, on which the suit is founded, and fourteen of them afterwards. None of them were reappointed after the passage of the ordinance, but kept on under the original employment. Plaintiff testified that about July 1, 1897, he went to the mayor, Ziegenhein, and asked for a job. The mayor took him to his son, Adam (then his private secretary), and told him to give him an appointment. Adam wrote out a paper which the plaintiff took to the assistant street commissioner, who sent him to the superintendent of excavation, who sent him out to inspect excavations, gave him a printed sheet, and ordered him to make a report on it when the work was done. He also instructed him as to the details of the work, and told him to make a daily report. He also told him that he had to be there at eight o'clock in the morning ready to go out at any time. This was substantially the proceeding in obtaining the appointment in the other cases.

Mr. Florshein, who was clerk of the excavation department in 1898-9, testified that appointments to the positions filled by plaintiff and his assignors were made by him when they would come to him with notes from the private secretary of the mayor, or the street commissioner or assistant street commissioner, and sometimes he would be in the mayor's office, or be sent for to go there, and would be told to put the man to work by the mayor's secretary. None of the notes were signed by the mayor. The substance of them was, "Put this man to work."

The referee found that there was never any formal appointment by the street commissioner approved by the mayor.

When an excavation permit was issued the subsequent connection of these men with the work is described by the referee in his general findings as follows:

"At the time this excavation was to be made, this permit, and also a report sheet, was turned over to some one who was to act for the defendant, and who was to see that the rules and regulations of the department were complied with. This person was selected from those who were required to report to the office for this work, by the superintendent or chief clerk of the excavation department, and were usually selected in rotation, although, from the number of times some of them seemed to have been sent out, in comparison with others, there is room for a reasonable doubt that this was not always done.

"The one selected, however, and to whom the permit and report sheet were given, would go to the place where the excavation was to be made and remain on that work until it was completed, whether it was one hour or two, and if it took days and weeks to complete, as in the case of gas and conduit excavations, he would go there daily until it was completed. He would see that the excavation was not made any larger than the permit called for, and after it was made would see that the street was properly filled and put back into proper shape as required by the ordinance or rules of the department, and that the dirt was removed and the street left as clean as before. The party representing defendant would then fill out the report sheet, putting in the size of the excavations, if one or more, giving the location, the number of permit, the surface material excavated, the number of hours and dates he was there, would sign the report sheet himself and have the party making the excavation, or the party in charge of it,

sign also. He would then return this report sheet to the excavation department and deliver it to the proper party."

Sometimes credentials were given to them, like the following:

Street Department, Commissioner's Office,
February 5, 1900.

To Whom It May Concern:
The bearer hereof, C. G. Balmer, is an inspector in the Excavation Division of the Street Department of the City of St. Louis, and is authorized to enforce the provisions of Section 1335 of the Revised Ordinance of 1892.

CHARLES VARRELLMANN, Street Commissioner.

The following is a copy of the pay-roll upon which the plaintiff receipted for his pay for August, 1897. Payments were made to him and his assignors monthly upon similar vouchers at the same rate of two dollars for each day upon which any work was assigned them.

The City of St. Louis.    Street Repairs—Miscellaneous Expenses.
To the following persons, Dr.
For services rendered in Street Department during month ending August 31, 1897.

| Names | Occupation | Period | Amount | We, the undersigned, acknowledge to have received from the Treasurer of the City of St. Louis the sums herein specified opposite our respective names. |
|-------|-----------|--------|--------|---|
| D. A. Clayton | Laborer | 20 | 2.00 | D. A. Clayton. |

They are described in and signed all reports as "Inspector."

The several ordinances of the city of St. Louis which are presented for construction are before us, and will sufficiently appear in connection with the consideration of the questions raised by counsel in their printed and oral arguments.

I.  That the city of St. Louis had power under its charter to fix the compensation to be paid to those employed as inspectors of excavation in its streets is not questioned. Nor is it disputed that had it exercised that power and fixed the compensation of the plaintiff and his assignors at seventy-five dollars per month

*Compensation of Public Servants.*

during the period of their employment at that work, it would not have lain in the mouth of its other servant, the street commissioner, to say that they would do the work for less. He could not contract with them to do so, for their right to compensation was fixed by law the same as his own, and did not rest upon contract. [Glavey v. United States, 182 U. S. 595; Bates v. St. Louis, 153 Mo. 18; State ex rel. v. Walbridge, 153 Mo. 194; State ex rel. v. Gordon, 245 Mo. 12; Grant v. Rochester, 79 App. Div. (N. Y.) 460, 175 N. Y. 473; Golding v. New York, 140 N. Y. Supp. 1020; Kehn v. New York, 93 N. Y. 291.] We are thus brought face to face with the question whether the Municipal Assembly of St. Louis has fixed the compensation of these inspectors as charged in the petition, and there is no better place to look for information on that subject than to the ordinances themselves.

II. At the time of the appointment of plaintiff and a number of his assignors it was provided by section 1332 of the Municipal Code of 1892, then in force, as follows:

**Compensation of Excavation Inspectors.**

"The street commissioner shall be the head of the street department, and shall have under his charge the surveying, construction, reconstruction, repairing, cleaning and sprinkling of the public streets, alleys and places, excepting parks, and also the supervision and control of all excavations, and refilling of same, made for the laying of gas and water pipes, sewers or any other purposes whatever."

It will be noticed that the matter of the control of "all excavations, and refilling the same," is not only distinctly, but *separately*, stated.

In the performance of these duties he was authorized, with the approval of the mayor, to appoint sprinkling inspectors, not to exceed twenty-one in number, who should receive for their services $83.33 1-3 per month. It is evident that the intelligent municipal supervision of the important work of constructing, re-

constructing, repairing and cleaning the streets would require a large number of competent inspectors, and (section 1336) he was required to employ *with the approval of the president of the board of public improvements,* such inspectors as might be required for the efficient working of his department, whose salaries and hire, excepting day laborers, should be established by ordinance. The "monthly compensation" of these "inspectors" was, by the terms of section 1384 of the same ordinance, fixed at $83.33 1-3 per month, the same as sprinkling inspectors. Special provisions were enacted by the Municipal Assembly for his government in the performance of his duties with reference to street excavation. It was forbidden that any such excavation should be made without written permission from him so to do, and the whole subject of obtaining this permission, and the control, supervision and performance of the work, was treated in section 1335. This provided, in substance, that any person or corporation desiring to make such an excavation should apply to the street commissioner for a permit, which should only be issued after the applicant had deposited with the city treasurer a sum of money as a special fund to be used by the street commissioner as therein provided. It prescribed minutely the manner in which the excavation and refilling should be done and the pavement replaced. It provided that in all cases where such work should be in an improved street or highway other than a macadamized street or paved alley, it should be done under the charge and direction of an inspector appointed by the street commissioner, whose duty it should be to see that the work was properly done in accordance with the rules prescribed by the commissioner. It then proceeded: "The pay of said inspector shall be charged against the deposit hereinbefore provided, and shall be at the rate of thirty cents per hour. The time allowed the inspector shall be computed only for the number of hours he is actually in-

specting the work. Whenever a person applies for a street excavation permit he shall state in writing in his application the hour he will commence work, and the inspector's time shall be allowed from the hour so stated, whether work is commenced or not; provided, the inspector is on the ground prepared to oversee the work.''.

Thus it will be seen that three classes of inspectors were separately and distinctly provided for, and the compensation of each as separately and distinctly provided for: the sprinkling inspectors, to be appointed with the approval of the mayor, and paid monthly wages; excavation inspectors, who were to be appointed by the street commissioner of his own motion and paid for services by the hour; and the general or additional inspectors, who were to be appointed with the approval of the president of the board of public improvements, and paid monthly compensation.

While the appellant in argument, as well as in his petition, plants himself unreservedly upon the amendatory ordinance number 19036 which we will presently notice, he is asking compensation for services performed during a considerable period preceding its enactment. For this reason, as well as for the assistance it gives us in the interpretation of the amendment, we will revert to section 1335 for the purpose of pointing out its provisions more definitely. That it covers the whole subject of street excavation by others than the city is evident, and it is here we must look for the municipal regulation relating to that work. Ordinances, like statutes, are primarily to be interpreted according to the ordinary meaning of their words and the proper grammatical effect of their arrangement. It will be presumed that the municipal legislature, like that of the sovereign State, are conversant with the simple rules of grammar and have expressed their will in apt terms, unless it is apparent in the act itself that the application of such a presumption would be absurd, extravagant, or repugnant to other provisions of the

law which must stand with it. It is only in some such case that we may sacrifice the language to construction. Bearing in mind that the street commissioner had charge of many other things connected with the construction, maintenance and care of the streets than excavation, including their sprinkling, and that by a previous section of the same ordinance relating especially to that subject (section 664) he had been given authority, *with the approval of the mayor,* to appoint, not only a superintendent of sprinkling, but twenty-one inspectors who should each receive for their services $83.33 1-3 per month, we come to the consideration of section 1335 providing in like manner for excavation. This section requires that the work of excavation and refilling shall be done under the charge and direction of an inspector appointed by the street commissioner. The Municipal Assembly, for some reason which we must presume was sufficient to themselves, omitted to require the approval of the mayor or president of the board of public improvements, and instead of providing for monthly compensation, as in case of both the sprinkling inspectors and additional inspectors authorized by section 1336, fixed his compensation at thirty cents per hour. It is definite and specific in the choice of words enacting that his compensation related to the pay of the inspector himself, and not to the reimbursement of the city on account of having furnished the services of its own salaried officer or employee. It calls it "the pay of said inspector," and it is his pay which shall be at the rate of thirty cents per hour. The ordinance says—not the time allowed *for* the inspector—but "the time allowed the inspector shall be computed only for the number of hours he is actually inspecting the work." It then proceeds to state that *the inspector's time* shall be allowed from the hour stated in the application, whether work is commenced or not, provided the inspector is on the ground prepared to oversee the work. It is impossible

that the Municipal Assembly should have made all these blunders in the use of so few words had they desired to say that the city should be allowed thirty cents per hour for the services of its inspector while on the ground. We can come to no other conclusion than that the object of section 1335 was to prescribe the practice in cases of excavation with the same or greater detail than that with which they prescribed the supervision of the sprinkling of the streets in section 664.

Another rule occasionally applied to the construction of statutes and ordinances where its use is indicated in the application of the words to the thing sought to be controlled, is that sometimes executive practice under it should be considered in arriving at the legislative intention. There is nothing more reasonable than this rule in its application to these ordinances which are developed from actual experience in the management of the complicated details of municipal administration, and which result in many cases from reports of administrative officers showing their necessity. The court, even when enlightened by evidence, cannot judge of the cheapest plan to provide supervision in desultory work of this kind, as can the officer in charge of and in touch with it continually, with every opportunity to gain some approach to an equal distribution of the service. We are not even in position to state the problems which confront him and we should not be slow to avail ourselves of his experience and practice in the interpretation of rules in operation under his constant observation and which in many instances result from advice founded upon his daily practice. We do not think it possible by any stretch of interpretation to construe the provision of ordinance No. 17188 as requiring the appointment, by the street commissioner with the approval of the mayor, of inspectors entitled to compensation at the rate of $75 per month, to oversee and direct the work of excavation.

III.  It remains to consider whether this has been changed by ordinance No. 19036.  This ordinance re-pealed sections 1333, 1334 and 1336 of the existing ordinance, leaving section 1335, covering the subject of street excavation, still in force, and, in lieu of the sections so repealed, divided the city into four districts and provided for the appointment by the street commis-sioner, with the approval of the mayor, of a district superintendent for each of said districts, who should, in their respective districts, supervise and have charge of the repairs, cleaning and sprinkling of the streets, alleys and public places, and for the appointment in the same manner of forty inspectors, ten of whom were to be assigned to each of the four districts and fixing the "salary" of these inspectors at $75 per month.  In addition to all other duties therein pro-vided, and which might be required of them by the street commissioner, they were to perform such duties as should be required by the district superintendent. No duty connected with excavation in streets was as-signed to the district superintendent, but these re-mained in the immediate charge of the street commis-sioner, who was allowed a clerk, to be appointed with the approval of the mayor, for services in that depart-ment alone, for the regulation of which the provisions of section 1335 were left in force, continuing with all its details the same plan in operation before the pas-sage of the amendatory ordinance.  We are now called upon to supplement the work of the legislature by con-struction so as to engraft upon ordinance 19036 the repeal by implication of all that portion of the con-tinued section relating to the appointment by the street commissioner and pay of inspectors engaged in that work.  We see nothing in the amendment to justify such a construction or to indicate an intention on the part of the Municipal Assembly to interfere in any re-

*Amendatory Ordinance 19036.*

spect with the details of the plan already established
with reference to excavation.

The provision of the new section 1336 referring to
the appointment by the street commissioner, with the
approval of the mayor, of inspectors at a salary of
seventy-five dollars per month, is simply a continua-
tion in a single section of the provision of the repealed
section of the same number, with the change that the
appointments therein authorized are to be made with
the approval of the mayor instead of the president of
the board of public improvements, and changing the
compensation fixed in the repealed section 1384 to sev-
enty-five dollars per month. No change whatever hav-
ing been made in section 1335 of the ordinance of 1892,
the compensation of inspectors appointed under its
provisions remains as therein fixed, and no other au-
thority is given the street commissioner, either with or
without the approval of the mayor, to appoint special
inspectors for the superintendence of that work. There
is no such position created by any ordinance in evi-
dence as inspector in the excavation department other
than the inspectors appointed under that section.

IV. It may be that under the broad provisions of
the new section 1333, the inspectors appointed there-
under and assigned to the districts may be used in ex-
cavation work by the street commissioner, if in his
judgment it should be necessary and the public inter-
est requires it, and the same may be true of the addi-
tional inspectors provided for in section 1336 of the
same amendment; but there is nothing in this record
to show that any of these men were ever appointed to a
position contemplated by either of those sections. Sec-
tion 1333 provides that the inspectors therein author-
ized shall be assigned to the respective districts, "and
shall, in addition to all other duties herein provided,
and such as may be required by the street commis-
sioner, perform such duties as may be required by the

·district superintendents.'' There were but forty of these provided for, and accordingly, in section 1336 it was further ordained, as it had been ordained in sub-stance in the corresponding section of the previous ·ordinance, that he might, with the necessary approval, appoint such additional inspectors as might be re-·quired for the efficient working of his department, and no modification was made in respect to their duties. The credentials given some of these men, and we will assume to all of them, that they were ''inspectors in the Excavation Division of the Street Department of the City of St. Louis,'' truly described their position, but no such position had been created by the Municipal Assembly otherwise than by the terms of section 1335, which prescribed their duties and compensation. They were never called upon by the street commissioner to do any work, or to hold themselves in readiness to do any work other than that provided for in the same section.

Applying the rule so strenuously urged by the ap-pellant that the performance and acceptance of the services with the knowledge of both the appointing and advisory officers was equivalent to a formal appoint-ment, we arrive at the result that they were entitled to the compensation of thirty cents per hour provided for the service. It may have been and probably was the fact that two dollars per day for each day in which they performed any service was better. They are not, how-ever, complaining on that account, but simply suing because they feel aggrieved that they have not been paid seventy-five dollars per month, and in this we think their position is not well taken.

It follows that the judgment of the circuit court will be and is affirmed. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.